George E. HAMILTON III, et al., Appellants,

v.

Robert C. NEEDHAM, Francis Caroline Beamer, and George L. McClintock, Jr., Appellees.

No. 84–1634.

District of Columbia Court of Appeals.

Argued Oct. 18, 1985.
Decided Dec. 31, 1986.

James C. Gregg, Washington, D.C., with whom Vicki J. Hunt, Arlington, Va., was on the brief, for appellants.

George R. Clark, Washington, D.C., for appellee Robert C. Needham.

James R. Michal, with whom Benjamin W. Dulany, Washington, D.C., was on the brief, for appellee George L. McClintock, Jr.

Before FERREN, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This case involves a legal malpractice claim against the partners of a law firm, Hamilton and Hamilton,[1] which in drafting a will omitted a residuary clause requested by the testatrix naming the plaintiff, Robert C. Needham, as sole residuary legatee. In a prior appeal, we established that in this jurisdiction an intended beneficiary under a will could bring a malpractice action against the drafting attorneys despite lack of privity. *Needham v. Hamilton*, 459 A.2d 1060 (D.C.1983). Upon remand the trial court entered summary judgment in favor of Needham for the amount of the additional inheritance he would have received had the will included the omitted residuary clause.

Hamilton appeals. His major contentions are that the trial court erred in 1) failing to require expert testimony on the attorney's standard of care; and 2) relying on extrinsic evidence as to the testator's true intent. Hamilton also appeals the trial court's renewed dismissal of his previously dismissed third-party complaint, from which no appeal was taken, against the intestate heirs who received the inheritance that would have passed to Needham under the will if correctly drawn. We affirm.

## I.

In our prior opinion we set forth certain "undisputed facts" of this case.

---

1. For convenience, the defendants in this case will be referred to in the singular, collectively, as "Hamilton."

Needham was the nephew of Elizabeth McC. Jones. In the summer of 1974, Mrs. Jones directed the appellees [Hamilton] to prepare a new last will and testament for her. Between August and December of 1974 several drafts of the will were prepared by the appellees, each of which named Needham in the thirteenth paragraph as the sole residuary beneficiary. An identical provision was contained in Mrs. Jones' earlier will which had also been prepared by appellees. Around December 5, 1974, the appellees delivered to Mrs. Jones a draft will designating Needham as the sole residuary beneficiary.

Sometime on or after December 5, 1974, Mrs. Jones requested that appellees make further changes in the draft will to include certain specific bequests for her grandnieces and grandnephews. In order to accomplish this, appellees inserted a new thirteenth paragraph. Due to some error, this new draft failed to include any residuary clause. Mrs. Jones executed this erroneous will on January 24, 1975, and died on January 26, 1980. The omission was not discovered until January 28, 1980, at which time appellees admitted that Needham was to have been named as the sole residuary beneficiary.

*Needham v. Hamilton, supra,* 459 A.2d at 1061.

Following his discovery of this information, Needham filed this suit against Hamilton for malpractice and Hamilton filed a third-party complaint against the two additional intestate takers.[2]

The trial court dismissed Needham's complaint,[3] ruling that Needham's lack of privity with Hamilton barred the action.

The trial court also dismissed without explanation Hamilton's third-party complaint. Needham appealed the dismissal of his complaint to this court and we reversed and remanded. *Needham v. Hamilton, supra.* Hamilton did not appeal the dismissal of his third-party complaint.

On remand, Needham sought and obtained summary judgment in the trial court in the amount of $59,381.22.[4] On the ground of *res judicata,* the trial court again dismissed Hamilton's third-party complaint, holding that Hamilton's failure to appeal the prior dismissal barred any further proceedings against the additional intestate heirs. Hamilton appeals both actions of the trial court.

## II.

### A.

In attacking the entry of summary judgment, Hamilton's first major contention is that expert testimony was required both as to the proper standard of care for an attorney who omits the residuary clause from the redraft of a will and as to whether his conduct fell below that standard.

We have recently adopted the widely followed rule that in a legal malpractice action, "the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C.1982). The kind of lack of care and skill that can be found to be negligence as a matter of common knowledge may include failures to act. In *O'Neil,* we listed some examples of such negligence: allow-

2. Not having been provided for in the will, Mrs. Jones' residuary estate passed through intestacy. Needham received one-half of that estate, and the other half was shared equally by appellees Beamer and McClintock.

3. Hamilton labeled his motion as one to dismiss; the trial court's formal order granted summary judgment for Hamilton. However, on appeal and in our mandate, we treated the ac-

tion as a dismissal of Needham's complaint. *Hamilton v. Needham, supra,* 459 A.2d at 1061.

4. The trial court granted partial summary judgment on the issue of Hamilton's liability on September 26, 1984. The court granted summary judgment on the issue of damages on October 17, 1984, with no opposition having been filed. The calculation of damages is not challenged on appeal.

ing a statute of limitations to run, failure to follow client's explicit instructions, failure to file state inheritance tax returns and permitting entry of default against a client. *Id.* at 342.

This case falls within this line of "common knowledge" exceptions to the normal requirement of expert testimony. It raises no complex issue. A lawyer who admits that he omitted from a will a residuary clause requested by the testator and thereby causes the residual estate to pass by intestate succession has facially demonstrated an obvious lack of care and skill. No expert need guide the factfinder here. Because Hamilton offered no meaningful facts to justify or excuse his failure and no real issue was presented as to causation,[5] we conclude that the trial court properly found the malpractice was established.[6]

Hamilton argues that testator's failure to observe the omission of the residuary clause relieves him of liability. While it is true that one is normally bound by what one signs, an important exception to this doctrine is where "because of a confidential or fiduciary relationship, the client has a right to rely upon his attorney and is not forced, as he would be in an adversary position, to weigh the effect of every word in fine print of the modern deed forms." *McWhorter, Ltd. v. Irvin,* 154 Ga.App. 89, 90, 267 S.E.2d 630, 632, *cert. dismissed,* 246 Ga. 229, 271 S.E.2d 216 (1980) (malpractice action by client against attorney for inadvertent insertion in deed of loan assumption agreement). This exception is applicable to the facts of the case before us.

### B.

■ Hamilton's other principal attack on the summary judgment is that the trial court erred in looking to evidence outside the will to establish the testator's true intent. We disagree. To have any real meaning, our holding in *Needham v. Hamilton, supra,* that Needham could bring this legal malpractice action, must sanction as a corollary his use of evidence outside the will to support his claim—evidence which indeed comes largely from Hamilton himself. Without the use of such extrinsic evidence, his case would be rendered unprovable.[7]

---

5. The following are representative of Needham's statements of material facts not in dispute and Hamilton's responses:

NEEDHAM: 2. Defendant Hamilton admitted under oath that he should have noticed the omission of the residuary clause but he did not....
HAMILTON: ... the matters set forth in paragraph 2 are not in dispute.
NEEDHAM: 6. Defendant Hamilton proofread the will but failed to notice the omission of the residuary clause.
HAMILTON: 6. ... the matters set forth in paragraph 6 are not in dispute....
NEEDHAM: 7. The only reason that the plaintiff did not receive the full residuary estate was the deletion of the residuary clause by Mr. Hamilton.
HAMILTON: 7 ... the matters set forth in paragraph 7 are not in dispute.
NEEDHAM: 8. Mr. Hamilton admitted that the omission of the residuary clause was his fault.
HAMILTON: 8. ... the matters set forth in paragraph 8 are not in dispute....
Hamilton's responses set forth his view that the admitted facts were neither relevant nor material to the issues then pending before the trial court, except insofar as they pertained to Needham's failure to seek reformation of the will.

6. An attorney may be found negligent as a matter of law in a clear case such as this. *See e.g., Kuehn v. Garcia,* 608 F.2d 1143, 1147–48 (8th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980); *Central Cab Co. v. Clarke,* 259 Md. 542, 550, 270 A.2d 662, 667 (1970). *Cf. O'Neil v. Bergan, supra,* 452 A.2d at 342 n. 6.

7. Thus we necessarily cannot adopt the sweep of such cases as *DeMaris v. Asti,* 426 So.2d 1153 (Fla.App.1983), relied on by Hamilton, holding that liability to intended beneficiaries for legal malpractice can lie only if "the testamentary intent, *as expressed in the will,* is frustrated." *Id.* at 1154 (emphasis in original). *See also Kirgan v. Parks,* 60 Md. App. 1, 478 A.2d 713, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984). We are not dealing here, however, with a situation where the alleged intent contradicts the language of a will, a case we leave for another day. Here, Mrs. Jones' will is silent as to the disposition of her residuary estate. Therefore, a finding that she intended that it pass to Needham is in no way contradictory to, nor does it frustrate, the language of the will itself. Indeed,

Hamilton also asserts that Needham failed to exhaust his judicial remedies by not first seeking reformation of the will. The clearly prevailing rule is that the doctrine of reformation is not applicable to wills except that inconsequential errors appearing in a will may be corrected. *See e.g., Shriners Hospital for Crippled Children v. Maryland National Bank,* 270 Md. 564, 580, 312 A.2d 546, 555 (1973); 1 *Page on the Law of Wills,* § 13.8 (W. Bowe & D. Parker ed. 1960). *Cf. In re Kerr's Estate,* 139 U.S.App.D.C. 321, 333, 433 F.2d 479, 489–90 (1970).

The leading scholarly work advocating a change in the existing law acknowledges the prevalence of the traditional rule. Langren & Waggoner, *Reformation of Wills on the Ground of Mistake: Change of Direction in American Law?,* 130 U.Pa.L. Rev. 521 (1982).[8] Such being the general state of the law and without expressing any views as to its application in our juris-

diction, we are unwilling to impose a mandatory duty to seek such reformation before an action may be brought against a negligent drafting attorney.

### III.

The other major issue on appeal is whether the trial court acted properly in dismissing Hamilton's third-party complaint on the ground that the third-party complaint was *res judicata* as to any subsequent action against the intestate takers. Hamilton argues that the order dismissing the original complaint mooted his third-party complaint and thus required its dismissal.[9] He therefore asserts that when we reinstated Needham's complaint in *Needham v. Hamilton, supra,* Hamilton's third-party complaint was revived.[10]

We cannot agree. When plaintiff Needham appealed the trial court order dismissing the complaint, Hamilton had fourteen

---

the absence of any residuary clause customary in a professionally drawn will coupled with the presence in the will of a provision that any inheritance taxes due to be a charge against "my residuary estate" provide internal evidence within the will itself that something may be awry.

A somewhat analogous case is *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224 (1984), a malpractice action in which the attorney had failed to include in the will any testamentary disposition of the property in the event (which in fact occurred) that the testator died within 30 days of her husband but not in a common disaster. The property thus passed by intestacy rather than to the plaintiffs, as it was alleged the testator intended. The Illinois Supreme Court reversed a dismissal of the complaint. It noted, among other things, that "the provisions of the wills, and the probate administration, remain unaffected," and that thus "[o]n these facts, the present action is not a collateral attack on the wills." 80 Ill.Dec. at 775, 466 N.E.2d at 227.

8. Policy considerations pro and con are discussed in *Connecticut Junior Republic v. Sharon Hospital,* 188 Conn. 1, 448 A.2d 190 (1982) (3–2 decision) (will admitted to probate despite allegation that scrivener mistakenly inserted a wrong list of charities).

9. Hamilton argues that the trial court's brief two-page order can be read to show that it intended this result. Prior to the entry of the

order, motions had been filed by both cross-defendants to dismiss or, alternatively, for summary judgment. The motions were based both on procedural and substantive grounds. Among other things, the motions asserted that even if all allegations were true and a mistake had been made, the will spoke for itself and could not be collaterally attacked, D.C. Code § 16–3111 (1973), and that Hamilton was not entitled to recover under an unjust enrichment theory. Needham, in supporting the motions of the third-party defendants, also asserted that to allow such recovery would allow Hamilton to escape liability for his admitted negligence. Thus, however it may be in other circumstances, *cf.* note 12 *infra,* we do not think that the cross-defendants here should have been required to speculate as to possible limitations on the apparently unqualified order of dismissal.

10. Hamilton acknowledged in his brief on the original appeal that his third-party complaint was not involved in the appeal. Although the trial court's unqualified dismissal of the third-party complaint operated as an adjudication on the merits, Super.Ct.Civ.R. 41(b), that dismissal was never before us and we took no action on it. Our formal mandate instructed only that the original complaint be reinstated. Presumably because of Hamilton's argument that the third-party complaint had thus been "revived," the trial court on remand expressed its rejection of this argument in the form of a renewed dismissal of the third-party complaint.

days from the date of Needham's appeal to file his own appeal. D.C.App.R. 4(a). He did not do so, although he was a potentially aggrieved party under an obligation to protect his own interests. As Professor Moore states:

> The terms of a judgment may be such that a party is not aggrieved unless and until an appeal is taken by another. Thus a judgment fully exonerating a defendant, and in consequence exonerating one who was impleaded by the defendant, gives the defendant full relief. But if the plaintiff appeals from the judgment exonerating the defendant, the defendant is potentially aggrieved by the exoneration of the third-party defendant and may, and if he desires reversal apparently must, appeal from the judgment to the extent that it exonerated the third party.

9 J. MOORE, FEDERAL PRACTICE AND PROCEDURE ¶ 203.06 at 3–25 (2d ed. 1981).

The case of *Whitehead v. American Security and Trust Co.*, 109 U.S.App.D.C. 202, 285 F.2d 282 (1960), is controlling. There, Whitehead sued the bank which then impleaded the third-party defendant. The district court entered a judgment for the bank and for the third-party complainant. Only plaintiff Whitehead filed a timely appeal. The appellate court reversed the district court and remanded with directions to enter judgment for Whitehead. Because the bank had failed to appeal the judgment in favor of the third party defendant in a timely manner,[11] the court did not disturb

that ruling. The court found unpersuasive the bank's argument that the plaintiff's notice of appeal brought the whole judgment before the court. As a result, the bank was liable to plaintiff and could not seek reimbursement from the third-party defendant.[12]

*Whitehead* governs the instant case and is binding on us. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971). The trial court correctly refused to reinstate the dismissed third-party complaint.[13]

*Affirmed.*

---

**11.** The old Rule 73(a), Fed.R.Civ.P., provided a thirty day period for all parties to file an appeal. In *Whitehead,* the bank waited until plaintiff appealed and then missed the filing deadline. Now, under both Fed.R.Civ.P. 4(a) and D.C. App.R. 4(a), a party has fourteen days from the time another party has filed an appeal in which to appeal.

**12.** *Whitehead* stated that it rested on jurisdictional grounds. The result is consistent with the doctrine that a successful party who does not take a cross-appeal cannot attack the judgment on appeal, which has been characterized as a well-established rule of practice to be deviated from only in unusual cases. *Edwards v. Woods,* 385 A.2d 780, 783 (D.C.1978). We need

not reach the issue whether the *Whitehead* rule applicable to third-party complaints allows for any exceptions; even assuming that it does, we do not find here any circumstances which would compel us to deviate from the normal rule. *See* 9 J. MOORE, FEDERAL PRACTICE AND PROCEDURE ¶ 204.11[4], [5] (2d ed.1981).

**13.** *Cf. Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 399, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (a final judgment on the merits which is not appealed is *res judicata* ). The court refused to find an exception to this rule simply because a party's rights were "closely interwoven with those of another party's." *Id.* at 401, 101 S.Ct. at 2429.