## MIERAS v DeBONA

Docket No. 100259. Argued November 7, 1995 (Calendar No. 4). Decided July 9, 1996. Rehearing denied 453 Mich 1204.

Ruth A. Mieras and Elmer E. Ledbetter brought an action in the Oakland Circuit Court against Ronald V. DeBona, a lawyer who prepared a new will for their mother, Nita Ledbetter Jackson, claiming that he failed to draft the will in accordance with their mother's instruction to disinherit Juanita Neville, their sister, and divide her estate between them. They claimed further that because the will did not exercise a power of appointment with respect to a marital trust established by their father, in default of the exercise of that power, Neville became entitled to one-third of the corpus of the trust upon Jackson's death. The plaintiffs sought damages in the amount of Neville's one-third share of the corpus of the trust and legal fees incurred in defending her challenge of the new will and certain property transfers on the ground of undue influence. They sought additional damages for emotional distress. DeBona did not answer the complaint, but moved for summary disposition for failure to state a claim, asserting no attorney-client relationship between him and the plaintiffs and thus that no duty of due care in the drafting and execution of the will was owed them, and that they could not recover the cost of the probate litigation or damages for emotional distress. The court, John N. O'Brien, J., granted summary disposition for the defendant. The Court of Appeals, MARILYN KELLY and M. D. SCHWARTZ, JJ. (CAVANAGH, P.J., dissenting), reversed (Docket No. 142498). The defendant appeals.

In separate opinions, the Supreme Court *held*:

Beneficiaries named in a will may bring a tort-based cause of action against the attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary by nature of third-party beneficiary status. Because the will in this case fulfills the intent of the testator as expressed in that document, the decision of the Court of Appeals must be reversed.

1. An attorney's primary duty in drafting a will is to draft a document that legally accomplishes the testator's intent regarding disposition of the testator's property. Drafting a document that fulfills the testator's desire to transfer property to named beneficiaries,

however, creates a corresponding duty to the named beneficiaries because of their third-party beneficiary status.

2. In contracting with the testator to draft a will, an attorney implicitly agrees to draft the will in accordance with the standard of care applicable in that field. By nature of the named beneficiaries' status as third-party beneficiaries of the contract between the attorney and the testator, the attorney also owes the beneficiaries a tort-based duty to draft the documents with the requisite standard of care. Thus, there can be an independent duty owed to the beneficiaries, the breach of which is grounded in tort.

3. Requiring proof of a third-party beneficiary relationship properly limits the scope of liability. A nonclient plaintiff first must establish that the defendant-attorney owed a duty of due care by showing that the primary purpose of the relationship between the defendant-attorney and the client was to benefit or influence the nonclient. The obligation owed by the attorney to named beneficiaries is to exercise the requisite standard of care in fulfilling the intent of the testator as expressed in the will. A disappointed beneficiary should not be allowed to use extrinsic evidence to prove that the testator's intent is other than that set forth in the will.

Justice LEVIN, writing separately, stated that while DeBona owed no duty to the plaintiffs, he did owe a duty to Jackson, and the plaintiffs were intended beneficiaries of the new will. The absence of an attorney-client relationship between DeBona and the plaintiffs does not necessarily preclude them from maintaining an action against DeBona for a failure to prepare the new will in accordance with Jackson's instructions.

A rule of law that would bar the beneficiaries of a will from maintaining an action against a lawyer who prepared it contrary to the instructions of a deceased client would be unsound. A decedent's estate has no interest in who obtains the money. The estate's interest, as an estate, is simply to collect the money, to be administered properly, and to distribute it according to the will. The will and estate can be properly administered, transferring all the money to one child to the exclusion of the other children, or to a charity or other legatee in lieu of the children. The personal representative ordinarily does not have an interest in who obtains the money to be distributed. Thus, if a lawyer who prepares a will erroneously is to be accountable for breach of the duty owed the deceased client, the beneficiaries of the will must be able to maintain an action. No one else has sufficient interest, can show damage, or possesses the will, to do so.

The plaintiffs cannot maintain an action for DeBona's failure to protect them from Neville's claim of undue influence and the result-

ing litigation, or to recover the costs of the litigation. If the will were perfectly drafted, and the power of appointment had been duly exercised to divide the trust corpus equally between the plaintiffs, Neville nevertheless could have mounted her undue influence claim. The emotional stress of the intrafamily dispute was the result of the plaintiffs' desire to keep the preferment and Neville's challenge, and not error in drafting.

Although the interests of the testator and the persons intended to be benefitted are parallel, and there is no conflict of interest in recognizing an obligation on the part of the lawyer to draft a will in accordance with the client's directions, it would be unsafe to permit an action claiming that a lawyer failed to follow the client-testator's directions to be maintained on the basis of testimony from disappointed beneficiaries. Where the intent of the testator as expressed in the testamentary instrument is not frustrated, an attorney owes no duty that will give rise to a cause of action to persons not named in the instrument.

The action in this case cannot be maintained on the basis of the plaintiffs' testimony, after Jackson's death, that DeBona failed to follow even clearly communicated oral instructions to include a clause exercising the power of appointment to exclude Neville altogether. The plaintiffs' claims depend on extrinsic evidence beyond the four corners of the will. Although their evidence arguably does not contradict any provision of the will in the sense that the will makes no reference to the power of appointment under the marital trust, it is not unusual, in contrast with the omission of a residuary clause, for a will to fail to exercise a power of appointment. The failure to advert in the will to the power of appointment, and to whether it was being exercised, does not provide internal evidence within the will itself that something may be awry.

Reversed.

204 Mich App 703; 516 NW2d 154 (1994) reversed.

*Vlcko, Lane, Payne & Broder, P.C.* (by *Thomas W. Payne* and *Carol L. Fossee*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *Lawrence R. Donaldson*), for the defendant.

Amicus Curiae:

*Mary Rouleau, Steven S. Zalenznick, Dorothy Siemon,* and *Deborah Zuckerman,* for American Association of Retired Persons.

LEVIN, J. *(separate opinion).* Shortly before her death,[1] Nita Ledbetter Jackson signed a new will disinheriting her daughter, Juanita Neville, and dividing her estate between her other children, Ruth Ann Mieras and Elmer E. Ledbetter, the plaintiffs in this action.

The new will did not exercise a general power of appointment conferred on Jackson under the terms of a marital trust established for Jackson's benefit by her husband, Ellsworth C. Ledbetter, the father of the three children. In default of exercise of the power, Neville was entitled to one-third of the corpus of the trust upon Jackson's death.[2]

Mieras and Ledbetter commenced this action against Ronald V. DeBona, the lawyer who prepared the will, claiming that, when he failed to include in the will a provision exercising the power of appointment to exclude Neville and to divide the corpus equally between Mieras and Ledbetter, he failed to draft the new will in accordance with Jackson's instructions.

Mieras and Ledbetter seek to recover from DeBona the $208,722 that Neville received as her one-third share of the corpus of the marital trust and the "monetary costs," principally legal fees, incurred by Mieras and Ledbetter, and emotional distress damages suffered by them as a result of Neville's challenge of the

---

[1] On September 6, 1988.

[2] The other two thirds of the trust corpus were payable, on default of exercise of the power, to Mieras and Ledbetter equally.

new will,[3] and inter vivos transfers of Jackson's condominium and automobile to Ledbetter.[4] Mieras and Ledbetter claimed that DeBona should have taken measures to guard against an undue influence claim being asserted by Neville.

I

DeBona filed a motion for summary disposition,[5] asserting that Mieras and Ledbetter had "failed to state a claim on which relief can be granted," MCR 2.116(C)(8), because there was no attorney-client relationship between them and DeBona, and thus that he owed them no duty of due care respecting the drafting and execution of the new will, and that, in all events, they cannot maintain an action seeking to recover the cost of the litigation or for emotional distress damages. The circuit judge granted the motion.

The Court of Appeals reversed, stating that "an examination of decisions in other jurisdictions reveals a trend toward imposing attorney liability to nonclients who are harmed by the attorney's negligence in performing professional duties,"[6] either on a negligence, third-party beneficiary contract, or hybrid or multicriteria approach.

---

[3] Neville asserted that the will and property transfers were induced by undue influence exerted by Mieras and Ledbetter. It appears that the litigation also included the issue of Jackson's competency.

[4] At the same time that the new will was executed, Jackson executed documents transferring her condominium and automobile to Ledbetter. These documents were also prepared by DeBona.

[5] DeBona has not answered the complaint filed by Mieras and Ledbetter.

[6] 204 Mich App 703, 707; 516 NW2d 154 (1994), citing anno: *What constitutes negligence sufficient to render attorney liable to person other than immediate client*, 61 ALR4th 464, 473-475; anno: *Attorney's liability, to one other than immediate client, for negligence in connection with legal duties*, 61 ALR4th 615, 625.

The Court of Appeals observed that the defense of lack of privity had been eliminated by this Court in some professional negligence situations, and said that *Williams v Polgar*, 391 Mich 6, 15-18; 215 NW2d 149 (1974), *Friedman v Dozorc*, 412 Mich 1, 27-28; 312 NW2d 585 (1981), and *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 518-519; 475 NW2d 294 (1991), had adopted "a rule of liability to foreseeable relying third parties."

The majority in the Court of Appeals considered DeBona's argument that the imposition of a duty to third parties would create a conflict of interest for a lawyer involved in drafting a will, and responded that in other jurisdictions that have imposed a duty to third parties, such a duty has been recognized only where the "plaintiff is a named, intended beneficiary," the "intent of the testator, as expressed on the face of the instrument, is frustrated due to negligent drafting," and "no apparent conflict of interest arises because of the imposition of a duty" to such a named third party.[7]

The majority observed that Mieras and Ledbetter were named, and thus foreseeable third parties, and the desire to disinherit Neville was expressly set forth in the will. The majority saw no potential conflict, and therefore imposition of a duty was appropriate. The majority rejected the claim for costs in defending against the will challenge, but would allow recovery for mental anguish.

---

[7] 204 Mich App 708.

II

Jackson had scheduled an appointment with DeBona, her long-time lawyer, for August 8, 1988, but was unable to keep the appointment because of illness. On the day Jackson underwent surgery, August 10, 1988, Mieras and Ledbetter visited DeBona and conveyed Jackson's instructions to revise her 1982 will, which had also been drafted by DeBona,[8] to exclude Neville, in the words of the complaint, "from inheriting any property" of Jackson, and to provide that all "the property" of Jackson be inherited equally by Mieras and Ledbetter.[9]

DeBona prepared a new will, and documents transferring Jackson's condominium and automobile to Ledbetter. The next day, August 11, DeBona delivered to Ledbetter the new will and the other documents on the understanding that Mieras and Ledbetter "were to see to execution of the documents" by Jackson. Later that day, the day after she was operated upon, Ledbetter read the new will and the other documents to Jackson, who executed them in the presence of two of her acquaintances who acted as witnesses.

The August 11, 1988, will, dividing the residue equally between Mieras and Ledbetter, and not adverting to or exercising the general power of

---

[8] Jackson's 1982 will provided that the residue of her estate "including all the property over which I have a power of appointment," pursuant to the marital trust, was to be divided into equal shares among the three children.

[9] The complaint further alleges that DeBona "received no direction" that Jackson wished to revise her 1982 will to forgo exercise of her power of appointment, that DeBona understood that Jackson intended to exercise the power of appointment to provide that, upon her death, the assets in the marital trust would be divided equally between Mieras and Ledbetter, and to provide that Neville would not receive any portion of those assets.

appointment,[10] stated that the testatrix made "no provision in this Will for my daughter, Juanita L. Neville, for reasons best known to me."[11]

## III

The complaint asserted that DeBona understood that Neville could challenge the revisions in the will, and that he should have ascertained personally from Jackson, by telephone or in person, the revisions she wished to make "in her will and in the disposition of her property" to determine whether the documents that he was drafting "were accurate expressions" of her wishes "with respect to disposition of her property," and that DeBona failed to exercise "reasonable care, skill and diligence" when he accepted from Mieras and Ledbetter "who were the very people who would benefit from the revisions, instructions as to the revisions in the disposition of her property requested by" Jackson through oral communication by Mieras and Ledbetter to DeBona.

While Mieras and Ledbetter may believe that Jackson's "property" included the assets of the trust,[12] DeBona cannot be faulted—if the instructions were, as set forth in the complaint, to exclude Neville "from inheriting any *property*" of, and to provide that all

---

[10] See n 8 for the language of the 1982 will exercising the power of appointment.

[11] The will also stated that no provision was made for her husband, Leigh H. Jackson, because she and Jackson had entered into a prenuptial agreement and he was otherwise adequately provided for.

[12] Paragraph 19 of the complaint alleges:

The property of Nita (Ledbetter) Jackson included, inter alia, the assets of two trusts created under the Revocable Trust of her deceased husband, Ellsworth C. Ledbetter, and father of the plaintiffs.

"the *property*" of, Jackson be inherited equally by
Mieras and Ledbetter—for drafting the new will to
cover only Jackson's "property" and for not including
in the will a provision exercising the power of
appointment to exclude Neville from sharing in the
property of the marital trust.

The dissenting Court of Appeals judge said, and I
agree, that there is no inconsistency between disin-
heriting Neville respecting the property in Jackson's
estate, and not exercising the power of appointment,
resulting in Neville, Mieras, and Ledbetter each
receiving a one-third share of the corpus of the mari-
tal trust, in accordance with the terms or their
father's last will and testament upon their mother's
death.[13]

Because the interests of a lawyer's client and the
persons he intends to benefit in his will are parallel, I
agree with the majority in the Court of Appeals that
no conflict of interest would arise as a result of rec-
ognition of an obligation on the part of a lawyer to
draft a will in accordance with his client's instruc-
tions. Such a conflict of interest might, however, arise
if the lawyer were under an obligation, enforceable
after the testator's death by disappointed benefi-
ciaries, to go beyond the instructions received from

---

[13] The dissenting judge said:

I disagree with the majority's conclusion that the intent to disin-
herit the testator's daughter, Juanita Neville, was clearly expressed
in the will. I believe that the testator could have intended to pro-
vide for her daughter by failing to exercise the power of appoint-
ment, thus providing the daughter with one-third of the marital
trust.

Thus, Nita Jackson could have decided to exclude Juanita
Neville from her will because Neville was adequately provided for
by the terms of the trust.

the client to inquire whether the client might wish to otherwise revise the will to increase or diminish the shares of particular beneficiaries to be named, or who were named in an earlier will.

DeBona cannot be faulted for not inquiring, under the circumstances of August 10 and 11, described in the complaint, whether Jackson, who was about to undergo, or had undergone, major surgery, wished to exercise the power of appointment to deprive Neville of the share of the marital trust she would otherwise receive.

IV

The complaint further asserted that because DeBona failed to supervise the execution of the documents that he prepared, which he had entrusted to Ledbetter to obtain his mother's signature, the documents were called into suspicion, and Mieras and Ledbetter were subjected to protracted probate proceedings in which Neville challenged the will and other documents, and that they were also subjected to an intrafamily dispute, which caused emotional distress damage.

The majority and I conclude that Mieras and Ledbetter cannot maintain an action for DeBona's failure to protect them from Neville's claim of undue influence and the resulting litigation, or to recover the costs of the litigation.

If the will were perfectly drafted, and the power of appointment had been duly exercised to divide the trust corpus equally between Mieras and Ledbetter, Neville could nevertheless have mounted her undue influence claim. The emotional stress of the intrafamily dispute was the result of both Mieras' and

Ledbetter's desire to keep the preferment and Neville's challenge, not error in drafting.

A conflict of interest might arise if an obligation were imposed on a testator's lawyer to protect named beneficiaries from a claim of undue influence.

The Court of Appeals held that Mieras and Ledbetter could recover "emotional damages" on the basis that "the intrafamilial conflict, strife and hostility resulting from the will contest caused them emotional injury."[14] Because DeBona was not under an obligation to protect Mieras and Ledbetter from a claim of undue influence, or to go beyond the instructions to inquire whether his client might wish to increase or diminish the shares of particular beneficiaries, and because the emotional stress of the intrafamily dispute was also the result of Mieras' and Ledbetter's desire to keep the preferment, not error in drafting, there is no need to reach the question whether and under what circumstances emotional distress damages might be recoverable for legal malpractice.

V

While I agree with DeBona that he owed no duty to Mieras and Ledbetter,[15] I agree with Mieras and Ledbetter and the Court of Appeals that he did owe a duty to Jackson, that Mieras and Ledbetter were intended beneficiaries of the new will, and that the absence of an attorney-client relationship between DeBona and them does not necessarily preclude them from maintaining an action against DeBona for a fail-

---

[14] 204 Mich App 710-711.

[15] See *Friedman v Dozorc, supra,* pp 27-28; *Atlanta Int'l Ins Co v Bell, supra,* pp 518-519.

ure to prepare the new will in accordance with Jackson's instructions.

A majority of courts has held that beneficiaries named in a will may maintain an action as third-party beneficiaries against a lawyer for breach of contractual obligations owed the testator by the lawyer.[16] These courts have generally described the duty as contractual in origin, emanating from the third-party beneficiary doctrine.[17] An action in tort for breach of this duty may be maintained.[18] Some courts have permitted an action in either tort or contract.[19]

---

[16] *Schreiner v Scoville*, 410 NW2d 679, 682 (Iowa, 1987) (an action may be maintained by "direct, intended, and specifically identifiable beneficiaries of the testator"). See also *Hale v Groce*, 304 Or 281; 744 P2d 1289 (1987); *Flaherty v Weinberg*, 303 Md 116; 492 A2d 618 (1985); *DeMaris v Asti*, 426 So 2d 1153, 1154 (Fla App, 1983); *Espinosa v Sparber*, 612 So 2d 1378 (Fla, 1993); *Guy v Liederbach*, 501 Pa 47, 64; 459 A2d 744 (1983).

2 Restatement Contracts, 2d, § 302, pp 439-440, provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and

\*     \*     \*

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

[17] *Stowe v Smith*, 184 Conn 194, 198-199; 441 A2d 81 (1981); *Flaherty*, n 16 *supra*; *McLane v Russell*, 131 Ill 2d 509; 546 NE2d 499 (1989).

[18] [W]e conclude a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator's testamentary instruments. The thrust of any action brought by such an individual, whether couched in terms of contract or tort, [*Stowe, Flaherty*] necessarily will center on the existence and breach of this duty of care, see *Heyer* [*v Flaig*, 70 Cal 2d 223] 227; 449 P2d [161] 164 [(1969)] ("[T]he crux of the action must lie in tort . . . [since] there can be no recovery without negligence.") . . . . [*Schreiner*, n 16 *supra*, p 682.]

[19] *Id.* See, also, Prosser, Torts (4th ed), p 621.

A rule of law that would bar the beneficiaries of a will from maintaining an action against a lawyer who prepared it contrary to the instructions of his deceased client would be unsound. A decedent's estate as such has no interest in who obtains the money. The estate's interest, as an estate, is simply to collect the assets, to administer properly, and to distribute according to the will.[20] The will and estate can be properly administered, transferring all the money to one child to the exclusion of the other children, or to a charity or other legatee in lieu of the children.

The personal representative does not ordinarily have an interest in who obtains the money that is to be distributed.[21] His interest might—as here—be adverse to one or more of the beneficiaries, i.e., where the will names one child as executor and bequeaths him all the money to the exclusion of the others. That personal representative would have no reason to sue the lawyer who drew the will that benefitted him.

Thus, if a lawyer who prepares a will erroneously is to be accountable for breach of the duty he owed his deceased client, the beneficiaries of the will must be able to maintain an action. No one else has a sufficient interest, can show damage, or possesses the will, to do so.

---

[20] The Supreme Court of California observed:

> [T]he executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss. [*Heyer*, n 18 *supra.*]

[21] *Id.*

It would be unconscionable to permit admitted actionable conduct to be insulated by the fortuitous death of the person recognized in the law to have standing to prosecute such a claim, where the brunt of the injury from such conduct is born by a living party. [*Guy v Liederbach*, 501 Pa 47, 64; 459 A2d 744 (1983) (Nix, J., concurring).][22]

VI

Ordinarily, when a defendant seeks summary disposition on the basis that he owed no duty to the plaintiff, the inquiry would be at an end when the court concludes that there is a duty. The merits of factual allegations cannot be considered in deciding a (C)(8) motion.[23] In the instant case, there are no depositions or other discovery.[24]

Although the interests of the testator and the persons whom he intends to benefit are parallel, and there is no conflict of interest in recognizing an obligation on the part of the lawyer to draft a will in accordance with his client's directions,[25] it would be unsafe to permit an action claiming that a lawyer failed to follow his client-testator's directions to be maintained on the basis of testimony from disap-

---

[22] See also *Auric v Continental Casualty Co*, 111 Wis 2d 507; 331 NW2d 325 (1983); *McLane*, n 17 *supra*.

[23] MCR 2.116(C)(8) concerns a motion alleging that the opposing party has "failed to state a claim on which relief can be granted." A motion under (C)(10) asserts the absence of a "genuine issue as to any material fact . . . ."

[24] There may have been discovery in the undue influence case, which was settled.

[25] [T]he interests of the testatrix and the intended beneficiary with regard to the proper drafting and execution of the will are the same. [*Needham v Hamilton*, 459 A2d 1060, 1062 (DC App, 1983).]

pointed beneficiaries.[26] In *DeMaris v Asti*, 426 So 2d 1153, 1154 (Fla App, 1983), a Florida appellate court observed:

> There is no authority—the reasons being obvious—for the proposition that a disappointed beneficiary may prove, by evidence totally extrinsic to the will, the testator's testamentary intent was other than as expressed in his solemn and properly executed will.[27]

In the instant case, this action cannot be maintained on the basis of Mieras' and Ledbetter's testimony, after Jackson's death, that DeBona failed to follow even clearly communicated oral instructions to include a clause exercising the power of appointment to exclude Neville altogether.

VII

The Court of Appeals, in *Ginther v Zimmerman*, 195 Mich App 647, 655; 491 NW2d 282 (1992), ruled that "where the intent of the testator as expressed in the testamentary instrument is not frustrated, an attorney owes no duty that will give rise to a cause of action to persons not named in the instrument." The Court said that it expressed no view regarding the lawyer's "liability to direct and intended beneficiaries named in the instrument where the intent of the testator, as expressed within the *four corners* of the instrument, has been frustrated." (Emphasis added.)

---

[26]    [A]dmitting extrinsic evidence heightens the tendency to manufacture false evidence that cannot be rebutted due to the unavailability of the testator. [*Espinosa*, n 16 *supra*, p 1380.]

[27] Similarly see *Espinosa*, n 16 *supra*.

In the instant case, the Court of Appeals said that the question not reached in *Ginther* was "raised in this case."[28] The Court noted that the will named Mieras and Ledbetter as "the intended beneficiaries," and expressly made no provision for Neville.

Although Mieras and Ledbetter were "intended beneficiaries named" in the will, this in itself does not support maintenance of an action against DeBona seeking damages for asserted negligence in failing to follow Jackson's directions to provide them with legacies above and beyond those set forth in the will. Nor does the statement in the will that Jackson made no provision for Neville, and the contrast between the 1982 will, which exercised the power of appointment,[29] and the 1988 will, which did not, justify the conclusion that the 1988 will was not in accord with "the intent of the testator, as expressed within the four corners of the instrument . . . ."

The "four corners of the instrument" formulation, set forth in *Ginther*, was based on cases holding that a lawyer was subject to liability "to named beneficiaries of a will where the intent of the testator, as discernable from the face of the instrument, was frustrated either by faulty drafting or improper attestation."[30] The Court cited *Guy v Liederbach, supra,* where the legacy was voided because the legatee witnessed the will in accordance with the lawyer's instructions, *Lucas v Hamm,* 56 Cal 2d 583; 364 P2d 685 (1961), where the lawyer drafted the instrument in violation of the rule against perpetuities, resulting

---

[28] 204 Mich App 707.

[29] See n 8.

[30] *Ginther, supra,* p 652.

in the beneficiaries receiving less than intended, and *Heyer v Flaig*, 70 Cal 2d 223; 449 P2d 161 (1969), where knowing that the testatrix was about to remarry, the lawyer drafted a will that failed to mention the husband who claimed a portion of the estate as a post-testamentary spouse.

In *Heyer*, the court considered extrinsic evidence that the lawyer knew that the testatrix was about to remarry. Courts have also allowed extrinsic evidence where the evidence tended to show that that lawyer erroneously omitted a residuary clause or provision. Testators do not ordinarily ask that a will be drafted solely to bequeath specific property with the intent that the residue of the estate will be distributed as if they died intestate.

In *Arnold v Carmichael*, 524 So 2d 464, 467 (Fla App, 1988), the residuary clause contained in a former will had been omitted from the redrafted will. In allowing an action to be maintained, a Florida appellate court said that the evidence tending to show the drafting error did not "contradict any language expressing testamentary intent in the probated will, which was entirely silent as to the disposition of the residuary estate."

The Florida court cited approvingly *Hamilton v Needham*, 519 A2d 172 (DC App, 1986), in which the will had gone through a number of drafts that contained a residuary clause identical to an earlier will. Before the final draft was prepared, specific bequests were added in paragraph thirteen, but, "[d]ue to some error, this new draft failed to include any residuary clause" that in earlier drafts had been set forth in par-

agraph thirteen.[31] The court in *Arnold v Carmichael*
said, "[h]ere, as in *Hamilton*, the absence of a residu-
ary clause, which is customary in a professionally
drawn will, 'is internal evidence within the will itself
that something may be awry.' *Hamilton* at 175-176,
note 7."

Mieras' and Ledbetter's claims depend on extrinsic
evidence beyond the four corners of the will.
Although their evidence arguably does not contradict
any provision of the will in the sense that the will
makes no reference to the power of appointment
under the marital trust, it is not unusual, in contrast
with the omission of a residuary clause, for a will to
fail to exercise a power of appointment. The failure
to advert in the will to the power of appointment, and
to whether it was being exercised, does not provide
"internal evidence within the will itself that something
may be awry."

BOYLE, J. We agree with parts I, II, IV,[1] and V of the
lead opinion and with the result in this case.[2] We
write separately, however, to explain why a negli-
gence cause of action is proper on these facts, and

---

[31] See the report of a prior appellate decision in the cited case, *Need-
ham*, n 25 *supra*, p 1061.

[1] We agree with part IV of the lead opinion only to the extent that it
establishes that emotional distress damages are not proper in this case
because "[t]he emotional stress of the intrafamily dispute was the result
of both Mieras' and Ledbetter's desire to keep the preferment and Nev-
ille's challenge, not error in drafting." *Ante* at 287-288.

[2] We do not join in part III of the lead opinion because it is not neces-
sary for purposes of this case to state that property held in a marital trust,
over which the testator has the power of appointment, is not property of
the testator's estate. This conclusion has not been advocated by the par-
ties, is without support, and is either dicta itself, or renders the remaining
parts of the lead opinion's analysis dicta.

why we disagree with the lead opinion's use of extrinsic evidence in parts VI and VII.

I

Plaintiffs' complaint contains two counts, both grounded in negligence. Negligence, as noted by the Court of Appeals majority in this case, is one of the three principal theories courts in other jurisdictions have recognized for imposing attorney liability to nonclients who are harmed by an attorney's actions. See anno: *Attorney's liability, to one other than immediate client, for negligence in connection with legal duties*, 61 ALR4th 615, 625. The other two theories are third-party beneficiary contract theory, and a "hybrid" theory that involves a balancing of policy factors.[3]

The first element that a plaintiff must establish in any negligence claim is a duty the plaintiff is owed by the defendant. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). In this case, the linchpin of plaintiffs' case is establishing the nature and source of the duty the attorney owes to the beneficiaries under the will.

The lead opinion contends that the duty at issue in this case is not a duty owed by the drafter to the beneficiaries of the will, but, rather, the duty the drafter owed the testator. *Ante* at 288-289. After the testator's

---

[3] This approach involves balancing various factors

among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm. [*Lucas v Hamm*, 56 Cal 2d 583, 588; 15 Cal Rptr 821; 364 P2d 685 (1961).]

death, the named beneficiaries, for some reason not explained, were suddenly able to bring a tort cause of action against the drafter for breach of the duty owed to the testator by the drafter. This theory is flawed. First, if the named beneficiaries are to step into the shoes of the testator, and justification for the suit is to enforce a duty owed to the testator by the drafter, the beneficiaries would be allowed to recover only the damages the testator would be able to recover, presumably, the price paid for the will. See *Walker v Lawson*, 514 NE2d 629, 634 (Ind App, 1987) ("The estate is not harmed, except to the extent of attorney's fees paid"). Second, the personal representative of the estate is the proper party to assert a cause of action for breach of a duty owed to the testator. But as explained by other courts examining this approach, the personal representative has neither the legal capacity nor the incentive to assert a cause of action because the estate is not harmed in any way.

> After [the testator's] death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequest. Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss. [*Heyer v Flaig*, 70 Cal 2d 223, 228; 74 Cal Rptr 225; 449 P2d 161 (1969); see also *Guy v Liederbach*, 501 Pa 47; 459 A2d 744 (1983).]

If a negligence cause of action lies, the attorney must owe a duty directly to the beneficiaries.

Absent unique circumstances, an attorney is only liable in negligence to his client. As stated by Chief

Justice BRICKLEY in *Atlanta Int'l Ins Co v Bell*, 438
Mich 512, 518; 475 NW2d 294 (1991):

> The general rule of law implicated in this case dictates
> that "an attorney will be held liable for . . . negligence
> only to his client, and cannot, in the absence of special cir-
> cumstances, be held liable to anyone else." [Quoting 7 Am
> Jur 2d, Attorneys at Law, § 232, p 274.]

In *Atlanta Int'l*, we examined "whether defense coun-
sel retained by an insurance company to defend its
insured can be held answerable [to the insurance
company] for professional malpractice." *Id.* at 515. In
separate opinions, we held that the "principles of
common-law negligence do not generally require
imposition of third-party liability in the malpractice
context." *Id.* Although concluding that equitable sub-
rogation would permit a cause of action to be brought
against defense counsel, the Court rejected recogni-
tion of an independent cause of action because it
could create a conflict of interest that would derail
"the attorney's unswerving duty of loyalty of represen-
tation to the client [insured]." *Id.* at 519.

The concerns that prompted us to reject an inde-
pendent duty owed by defense counsel to the insur-
ance company in *Atlanta Int'l* are not present in this
case. Unlike the tripartite relationship among an
insurance company, an insured, and defense counsel,
where conflicts frequently exist between the goals
and objectives of the insurance company and the
insured, the tripartite relationship involving the testa-
tor, the beneficiaries, and the drafter does not neces-
sarily present the same conflicts primarily because of
the status of the beneficiaries under the will as third-

party beneficiaries of the contract between the attorney and the testator.

An attorney's primary duty in drafting a will is to draft a document that legally accomplishes the testator's intent regarding disposition of the testator's property. Drafting a document that fulfills the testator's desire to transfer property to named beneficiaries, however, creates a corresponding duty to the named persons because of their third-party beneficiary status. This is a contractual duty that gives rise only to contractual remedies.

If our inquiry were to end at this point, plaintiffs' claims would fail because neither count of the complaint was a claim in contract; both were grounded solely in tort principles. But this conclusion overlooks the tort-based liabilities that develop as a result of the contractual relationship when professional services are the product contracted for.

Typically, in contracting with the testator to draft a will, an attorney implicitly agrees to draft the will in accordance with the standard of care applicable in that field.

> Whenever an attorney or solicitor is retained in a cause, it becomes his implied duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management thereof. [*Eggleston v Boardman*, 37 Mich 14, 16 (1877).]

By nature of the named beneficiaries' status as third-party beneficiaries of the contract between the attorney and the testator, the attorney also owes the beneficiaries a tort-based duty to draft the documents with the requisite standard of care. Thus, there can be an

independent duty owed to the beneficiaries, the breach of which is grounded in tort.

> Standing alone, without a duty to plaintiff derived from defendant's contractual undertaking, plaintiff's tort claim would confront the rule that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. [*Hale v Groce*, 304 Or 281, 283-284; 744 P2d 1289 (1987).]

Requiring proof of a third-party beneficiary relationship properly limits the scope of liability. In order to withstand summary disposition, the nonclient plaintiff must first "establish that the defendant-attorney owed him a duty of due care by showing that the primary purpose of the relationship between the defendant-attorney and the client was to benefit or influence the nonclient-plaintiff." *McLane v Russell*, 131 Ill 2d 509, 514; 546 NE2d 499 (1989).

The analysis of this cause of action found in *Hale*, merits lengthy quotation.

> Because under third-party analysis the contract creates a "duty" not only to the promisee, the client, but also to the intended beneficiary, negligent nonperformance may give rise to a negligence action as well. Not every such contract will support either claim [contract or tort]. A contract to prepare a will or other instrument may promise different things. It may undertake to make a particular disposition by means specified by the client (for instance, in trust, or by a gift of identified property), or to accomplish the intended gift by specified means of the lawyer's choosing. Failure to do what was promised then would be a breach of contract regardless of any negligence. On the other hand, the lawyer's promise might be to use his best professional efforts to accomplish the specified result with the skill and care customary among lawyers in the relevant community. Because negligence liability of this kind arises only from

the professional obligation owing to the client, it does not threaten to divide a lawyer's loyalty between the client and a potentially injured third party, as defendant argues. [*Id.* at 286-287.][4]

Recognizing a tort-based cause of action under these circumstances does not create a conflict of interest for two reasons. First, because beneficiaries of a will have no rights under the will before the testator's death, a disgruntled beneficiary's cause of action does not ripen until the death of the testator. "[M]erely drafting and executing a will creates no vested right in the legatee until the death of the testatrix." *Stowe v Smith*, 184 Conn 194, 198; 441 A2d 81 (1981). Second, the only obligation owed by the attorney to named beneficiaries is to exercise the requisite standard of care in fulfilling the intent of the testator as expressed in the will. An attorney would never face conflicting obligations to the testator and the beneficiaries by drafting a document that properly fulfills the testator's intent as expressed in that document. Further, the testator is always free to change the beneficiary of the will, and the displaced beneficiary will have no cause of action. As noted in the concurring opinion in *Guy, supra*:

---

[4] Although this statement is the best explanation for why a tort cause of action should be recognized, we disagree with how the court in *Hale* applied the test to allow an unnamed beneficiary to state a cause of action. Thus, for the reasons set forth in part II of this opinion, we agree with the following statement by the Court of Appeals in *Ginther v Zimmerman*, 195 Mich App 647, 655; 491 NW2d 282 (1992):

We disagree with the result reached in *Hale*. We believe that where the intent of the testator as expressed in the testamentary instrument is not frustrated, an attorney owes no duty that will give rise to a cause of action to persons not named in the instrument.

The contract upon which the obligation arises required
the scrivener to fulfill the intention of the testator
expressed to him at the time of the drafting. The fact that
the testator could subsequently change the proposed testa-
mentary disposition is of no moment. The scrivener's obli-
gation was to provide that which he undertook to do and
the failure to do so constituted the breach which justified
the recovery. [*Id.* at 63, n 2.]

The duty owed to named beneficiaries is narrowly cir-
cumscribed and only requires the attorney to draft a
will that properly effectuates the distribution scheme
set forth by the testator in the will. Thus, we con-
clude that recognizing this limited cause of action
illustrates one of the "special circumstances" to
which this Court alluded in *Atlanta Int'l, supra,* in
which an attorney may be liable to beneficiaries of a
will for professional malpractice in negligently effec-
tuating the intent of the testator as expressed in the
will.

II

Regardless of the theory relied on to create a cause
of action—tort, contract, or a hybrid of the two—the
lead opinion's approach is internally inconsistent.
Although noting the evils of allowing disgruntled ben-
eficiaries to prove by evidence wholly extrinsic to the
will that the intent of the testator was other than that
set forth in the will, the analysis and cases relied on
by the lead opinion in parts VI and VII allow just that.

Notwithstanding that the lead opinion would pre-
clude use of extrinsic evidence in this case, the gen-
eral theme of the opinion is that extrinsic evidence,
or even allegations that a certain provision (especially
a residuary clause) should have been placed in the

will, would be admissible in other situations. The author of the lead opinion concludes that it is common not to include a power of appointment in a will; therefore, it was not error to do so in this case. Under the lead opinion, each separate paragraph of a will would have to be examined to determine whether it is common to include or exclude that provision from the will; the possibilities are endless.

The lead opinion properly acknowledges that a disappointed beneficiary should not be allowed to use extrinsic evidence to prove that the testator's intent is other than that set forth in the will.

> "There is no authority—the reasons being obvious—for the proposition that a disappointed beneficiary may prove, by evidence totally extrinsic to the will, the testator's testamentary intent was other than as expressed in his solemn and properly executed will." [*Ante* at 292, quoting *DeMaris v Asti*, 426 So 2d 1153, 1154 (Fla App, 1983).][5]

Only a few of the cases cited, however, properly illustrate or honor this limitation. Examples of the proper limitations on the use of extrinsic evidence are found in *Lucas v Hamm*, 56 Cal 2d 583, 588; 15 Cal Rptr 821; 364 P2d 685 (1961), *Guy, supra, Espinosa v Sparber*, 612 So 2d 1378 (Fla, 1993), and *DeMaris v Asti, supra*. In *Lucas*, the beneficiaries of a will brought suit against the drafter of the will, alleging that their rights failed to vest because the will, as drafted, violated the rule against perpetuities. Similarly, in *Guy*, a beneficiary's legacy was voided because the attorney who drafted the will allowed the beneficiary to also serve as a witness. In both cases,

---

[5] See also *ante* at 292, n 26.

the defect was clearly evident by examining only the will. Extrinsic evidence was not necessary to establish that the intent of the testator had been thwarted by attorney error. Thus, in both cases, the courts concluded that the beneficiaries had established a valid cause of action, albeit the former grounded in tort and the latter solely in contract.

In *Espinosa*, a testator's child brought suit against the attorney who drafted her father's will. The will and the first codicil were created before the child's birth; neither document contained an after-born child clause. After this child was born, the testator instructed the attorney to draft a second will that would include that child in the distribution scheme. As a result of disagreements regarding other provisions of the second will, it was never signed, but, instead, a second codicil was added to the initial will. The second codicil made no reference to the after-born child. After the testator's death, the after-born child filed a malpractice action against the attorney. The trial court granted summary disposition in favor of the attorney, and, on appeal, the question regarding whether a cause of action was proper on these facts was certified to the Florida Supreme Court.

The Florida Supreme Court began by acknowledging that a negligence cause of action properly could be brought by beneficiaries of a will. *Id.* at 1380. On these facts, however, the court concluded that summary disposition for the attorney was proper because the intent of the testator as expressed in the will was fulfilled.

> If extrinsic evidence is admitted to explain testamentary intent, as recommended by the petitioners, the risk of misinterpreting the testator's intent increases dramatically. Fur-

thermore, admitting extrinsic evidence heightens the ten-
dency to manufacture false evidence that cannot be rebut-
ted due to the unavailability of the testator. For these
reasons, we adhere to the rule that standing in legal mal-
practice actions is limited to those who can show that the
testator's intent *as expressed in the will* is frustrated by the
negligence of the testator's attorney. [*Id.* at 1380 (emphasis
in the original).]

Because the testator had not provided for the after-
born child in the second codicil, there was no evi-
dence in the will that the child was an intended bene-
ficiary of the transaction. Thus, the court concluded
that she did not have standing to bring suit.

These cases illustrate the proper limitations on the
use of extrinsic evidence. However, in addition to cit-
ing these cases, the lead opinion also cites a number
of cases that improperly examine material outside the
will and are, in any event, unnecessary to the disposi-
tion of this case. For example, in *Heyer v Flaig,
supra,* an attorney drafted a will for the testatrix who
intended to be married soon thereafter. The will was
valid on its face and properly disposed of the prop-
erty in accordance with the testatrix's intent as
expressed within the will. The will directed the estate
to be divided among the testatrix's daughters, but
failed to mention the new husband who claimed a
part of the estate as a post-testamentary spouse. The
daughters filed suit against the attorney to recover
the portion of the estate the husband received.

Unlike the approach taken by the Florida Supreme
Court in *Espinosa,* the California Supreme Court
relied on extrinsic evidence to conclude that the
attorney knew of the testatrix's forthcoming marriage
and that failure to "advise the testatrix that she

should change her will after her marriage" stated a valid cause of action in tort. *Heyer, supra* at 229. The lead opinion admits that the court in *Heyer* examined evidence extrinsic to the will, but apparently cites the case with approval. *Ante* at 294.

In a similar vein, the lead opinion seems to approve of the following cases, all of which rely on evidence outside the will to create a cause of action: *Schreiner v Scoville*, 410 NW2d 679 (Iowa, 1987); *Stowe, supra*; *Hamilton v Needham*, 519 A2d 172 (DC App, 1986). Additionally, the lead opinion explicitly cites and discusses the opinion of a Florida appellate court in *Arnold v Carmichael*, 524 So 2d 464 (Fla App, 1988). Aside from the fact that the portion of *Arnold* relied on by the lead opinion was implicitly overruled by the Florida Supreme Court five years later in *Espinosa, Arnold* allows disappointed beneficiaries to establish a cause of action by contending that the absence of a clause that is typically included in the will is internal evidence that the attorney failed to fulfill the intent of the testator. *Ante* at 294. In *Arnold,* the plaintiffs were the niece and grandniece of the testatrix. The testatrix had employed the defendant-attorney to modify an existing will to include two additional provisions. The defendant modified the will as directed, but the new will did not include the residuary clause that was present in the first will.

On appeal, the Florida appellate court initially noted that a "disappointed beneficiary may not prove 'by evidence totally extrinsic to the will [that] the testator's testamentary intent was other than as expressed in his . . . will." *Id.* at 466, quoting *DeMaris v Asti, supra.* However, the *Arnold* court went on to state that this limitation meant only that a

disappointed beneficiary could not introduce extrinsic evidence of testamentary intent that would conflict with the will. *Id.* at 467. Having expanded the scope of admissible evidence to all evidence that does not conflict with the will, the court then concluded that "the absence of a residuary clause, which is customary in a professionally drawn will, 'is internal evidence within the will itself that something may be awry.'" *Id.*, quoting *Hamilton v Needham, supra* at 175-176. The testator's intent as expressed in the will was ignored and evidence, not of what the testator intended but of what provisions are typical in most wills, was admissible to establish a cause of action. The scope of liability would be boundless under this formulation, and may well have led the Florida Supreme Court in *Espinosa* to limit the search for the testator's intent to examination of the will alone.

The lead opinion's willingness to deviate from the explicit limitation of extrinsic evidence it initially cites is also demonstrated by unnecessary speculation regarding whether powers of appointment are customarily included in a professionally drafted will. Although acknowledging that "Mieras' and Ledbetter's claims depend on extrinsic evidence beyond the four corners of the will," *ante* at 295, the lead opinion goes on to state:

> Although their evidence arguably does not contradict any provision of the will in the sense that the will makes no reference to the power of appointment under the marital trust, it is not unusual, in contrast with the omission of a residuary clause, for a will to fail to exercise a power of appointment. [*Id.*]

Thus, it appears that the lead opinion agrees with the rationale of the Florida Court of Appeals in *Arnold*. We conclude, however, that such speculation is neither proper nor necessary.

### III

We hold that beneficiaries named in a will may bring a tort-based cause of action against the attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary by nature of the beneficiary's third-party beneficiary status. Because the will in this case fulfills the intent of the testator as expressed in that document, we reverse the opinion of the Court of Appeals.

BRICKLEY, C.J., and CAVANAGH, RILEY, MALLETT, and WEAVER, JJ., concurred with BOYLE, J.