SORKOWITZ v LAKRITZ, WISSBRUN & ASSOCIATES, PC

Docket No. 242016. Submitted December 19, 2003, at Lansing. Decided
April 27, 2004, at 9:10 A.M. Leave to appeal sought.

Betty Sorkowitz, as trustee for the Morris and Sarah Friedman
Irrevocable Trust and the Sarah Friedman Trust, and as personal
representative of the estate of Sarah Friedman, deceased, and
other beneficiaries commenced a malpractice action in the Oak-
land Circuit Court against the law firm of Lakritz, Wissbrun &
Associates, P.C., and Kenneth Wissbrun. The plaintiffs asserted
that the defendants agreed to provide estate planning services to
the decedents but failed their duties and standard of care by not
including within the estate planning documents either a Crummey
clause or necessary generation-skipping tax language. The defen-
dants filed a motion for summary disposition for failure to state a
claim. The circuit court, Colleen A. O'Brien, J., relied on *Mieras v
DeBona*, 452 Mich 278 (1996), and *Bullis v Downes*, 240 Mich App
462 (2000), to support its conclusion that the plaintiffs lacked
standing to pursue a legal malpractice claim against the defen-
dants because, under the "four corners" limitation enunciated in
*Mieras*, the plaintiffs were unable to show that the decedents'
intent to use either a Crummey clause or generation-skipping
language was frustrated within the four corners of the decedents'
estate planning documents. The circuit court granted the defen-
dants' motion after concluding that the plaintiffs were unable to
prove that the decedents' intent was frustrated without use of
extrinsic evidence like that set forth in an affidavit by the
plaintiffs' expert. The plaintiffs appealed the dismissal of their
legal malpractice action.

The Court of Appeals *held*:

The four corners limitation set forth in *Mieras* did not have
controlling effect on the plaintiffs' legal malpractice action. *Mieras*
established that nonclient beneficiaries could maintain an action
against the drafting attorney only where the decedent's intent as
expressed in the "four corners" of a will had been frustrated. The
plaintiffs' claim did not fall within the "four corners" limitation of
*Mieras* or within the ambit of *Karam v Kliber*, 253 Mich App 410
(2002), because those cases involved competing claims between
beneficiaries or the choice between alternative estate planning

approaches. The concerns in those cases were with imposing conflicting duties upon the drafting attorney where the client and the beneficiaries' interests might diverge, or where a beneficiary's claims might be inconsistent with the client's intent. No similar concerns were involved in the instant case where the interests of the decedents, the estate, and all beneficiaries were aligned on the same side, and the dispute with the drafting attorneys involved whether the defendants discussed including tax saving language in the estate planning documents, and depending on those discussions, whether the failure to include that language frustrated the decedents' intent. Moreover, application of the *Mieras* "four corner" limitation was not required by precedent and did not apply to the plaintiffs' claim in this case where the plaintiffs sought to recover for the diminution in the assets left by decedents that was allegedly caused by the defendants' negligence. Therefore, the case should not have been dismissed on the pleadings, and extrinsic evidence ought to be developed by requiring the defendants to testify under oath and explain whether they discussed the tax saving language with the decedents, whether the decedents rejected its inclusion, or, if not discussed, the defendants ought to explain why.

Reversed and remanded.

FITZGERALD, P.J., dissenting. The circuit court did not err by granting the defendants' motion for summary disposition. The circuit court properly held that the Sarah Friedman estate lacked standing to sue because the only loss suffered by the decedent was deficient legal advice for which her personal representative could have recovered attorney fees paid, and neither the decedent nor the estate suffered a loss by payment of untoward taxes because that was an injury suffered by the beneficiaries. The named beneficiaries could not maintain their negligence claim because they relied on extrinsic evidence to prove that the decedents' intent had been frustrated. As stated in *Mieras*, a disappointed beneficiary could not use extrinsic evidence to prove that the decedents' intent was different than that provided in estate planning documents. Furthermore, the beneficiaries' alleged negligence claim related to tax consequences of estate planning, and that cause of action could be maintained only if the documents were in conflict or ambiguous. But, as set forth in *Karam*, if the intent expressed in the documents was clear and unambiguous there could be no cause of action, even if the intent expressed in the documents differed from the decedents' true intent. The plaintiffs provided only excerpts from the decedents' estate planning documents and their expert's affidavit in which the expert purported to interpret the documents. The excerpts shed no light on the issue

and the expert's interpretation of the estate planning documents intruded upon the court's province to decide questions of law. Thus, the plaintiffs failed to show that the documents did not comport with the decedents' intent expressed in those documents.

ATTORNEY AND CLIENT — LEGAL MALPRACTICE — ESTATE PLANNING — EXTRINSIC EVIDENCE.

The "four corners" rule of *Mieras v DeBona*, 452 Mich 278 (1996), which bars evidence extrinsic to a will, is not applicable to a claim for legal malpractice where recovery is sought for the diminution in assets left by a decedent alleged to have been caused by the negligence of the defendant attorney who provided estate planning, and where the interest of the plaintiffs, the deceased client, the estate, and all named beneficiaries, are aligned on one side, and there is no danger that the defendant attorney will be wrongly held accountable to a third-party for properly implementing the desires of his client.

*Robert H. Roether* for the plaintiffs.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Noreen L. Slank* and *Michael J. Sullivan*), for the defendants.

Before: FITZGERALD, P.J., and NEFF and WHITE, JJ.

WHITE, J. Plaintiffs appeal the dismissal for failure to state a claim, MCR 2.116(C)(8), of their legal malpractice action. We reverse.

We review de novo the circuit court's determination on a motion for summary disposition. *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.*

The question is whether plaintiffs adequately pleaded a cause of action for legal malpractice. Plaintiffs alleged that defendant agreed to provide estate planning services to decedents, which in this day and

age includes tax planning, and, in violation of their duties and the standard of care, failed to include a Crummey[1] clause and necessary generation-skipping tax language in the estate planning documents.

Here, as in *Karam v Kliber,* 253 Mich App 410; 655 NW2d 614 (2002), it is necessary to begin with an explanation of aspects of the federal estate and gift tax. The Internal Revenue Code provides for an annual exclusion from the unified estate and gift tax for as many gifts to as many persons as the donor chooses to make. At the time the estate documents were drafted, the exclusion was $10,000 per person.[2]

The annual exclusion applies only to a gift of a present interest, not to a gift of a future interest. Over thirty-five years ago, in *Crummey v Comm'r of Internal Revenue,* 397 F2d 82 (CA 9, 1968), the United States Court of Appeals for the Ninth Circuit held that gifts to a trust providing for a future interest would qualify as a present interest for purposes of the annual exclusion if the trust contains what is now known as a "Crummey" provision, which grants certain withdrawal rights to the beneficiaries. The use of "Crummey" provisions is capsulized in Federal Estate and Gift Taxes Explained (32d ed), § 2269:

Crummey *Trusts*

A gift of the right to demand a portion of a trust corpus is a gift of a present interest, as long as the donee-beneficiary is aware of the right to make the demand. The Tax Court held that transfers of property to a trust constituted a present interest where the trust beneficiaries (the grantor's grandchildren) had the right to withdraw an amount equal to the annual gift tax exclusion within 15 days of the transfer even though the only other interests

---

[1] *Crummey v Comm'r of Internal Revenue,* 397 F2d 82 (CA 9, 1968).

[2] The exclusion is now $11,000 per person.

the grandchildren had in the trust were contingent remainder interests. In so holding, the Tax Court applied the present interest test enunciated by the U.S. Court of Appeals for the Ninth Circuit in *D.C. Crummey,* concluding that the grandchildren's withdrawal rights, if exercised, could not be legally resisted by the trustees.[3]

Use of Crummey withdrawal rights to convert what would otherwise be a future interest into a present interest, to obtain the benefit of the annual gift exclusion, is consistent with a donor's intent to grant a future interest because, although a beneficiary is given an unqualified right to withdraw for a limited time, the beneficiary is not expected to exercise that right, and almost never does, and to do so is at the peril of incurring the displeasure of, and foregoing future gifts or bequests from, the donor.

The Internal Revenue Service has acquiesced in the use of Crummey clauses to transform a future interest, which would be subject to the unified tax, into a present excludable interest. The use of Crummey clauses has become standard in irrevocable trusts, allowing the donor to convert $10,000 (at the time of these trusts, now $11,000) for each beneficiary into a present excludable interest. In the instant case, plaintiffs provided the affidavit of an expert attesting that the standard of practice requires that an attorney practicing in the field of estate planning discuss and recommend the use of a Crummey clause, and that the failure to include the clause in the irrevocable trust here is unusual and extraordinary.

Defendants did not defend this case on the merits, but, rather, sought summary disposition under MCR 2.116(C)(8), asserting that "Michigan law directs that

[3] For an expanded discussion, see Bittker, Lokken, 5 Federal Taxation of Income, Estates and Gifts, 2d ed, § 124.3.4, pp 124-13-17.

only those who can establish, *without the use of extrinsic evidence,* that a decedent's intent has been frustrated by an attorney's negligent drafting of estate planning documents have standing to pursue a legal malpractice action against that attorney." Relying on *Mieras v DeBona,* 452 Mich 278; 550 NW2d 202 (1996), and *Bullis v Downes,* 240 Mich App 462; 612 NW2d 435 (2000), the circuit court granted summary disposition, concluding that plaintiffs were unable to establish that the decedents' intent was frustrated other than by use of extrinsic evidence such as that set forth in the expert's affidavit.

We agree that if the "four corners" limitation enunciated in *Mieras* controlled here, the circuit court's dismissal of the beneficiaries' claims would have been proper.[4] However, we do not agree that the "four corners" limitation controls.

---

[4] *Mieras* stated that nonclient beneficiaries could maintain an action against the drafting attorney only where the intent of the testator, as expressed within the "four corners" of the will, has been frustrated. Here, the expert's affidavit addressed the consequences of the proposed tax deficiency notices, identified the beneficiaries of the estate plan documents, identified the intention of the testator/settlor as to "provide for the secure future of" the various beneficiaries, declared that nowhere in the documents is there stated an intent to benefit the IRS or to pay unnecessary gift, estate, or generation-skipping taxes, and expressed the opinion that the standard of care for an attorney practicing in the field of estate planning required that the attorney discuss the tax consequences of the documents as well as the tax and nontax consequences of including a "Crummey" withdrawal right in the documents, and that it is unusual and extraordinary for an irrevocable trust that is intended to be the donee of future gifts not to include a "Crummey" withdrawal right.

While the affidavit makes the above observation that there is no stated intent to pay unnecessary taxes, and that it is "unusual and extraordinary" for an irrevocable trust like the trust here not to include a Crummey withdrawal right, it does not state that the estate plan documents demonstrate an intent to take full advantage of tax planning devices that would minimize the amount of taxes paid, or that there are provisions in the estate plan documents that are inconsistent with the absence of a Crummey provision, or that there are provisions that are

*Mieras* was a dispute between beneficiaries where the alternative claims concerning the decedent's intent were both plausible. *Karam, supra,* also relied on by defendants, was a dispute concerning the decedent's intent regarding alternative estate planning approaches. Both cases involved claims that the decedent intended an approach contrary to the actual documents. The claim here does not involve competing contentions of beneficiaries or the choice between alternative estate planning approaches, but, rather, the claim here is that defendants were negligent in their tax planning advice, and failed to include provisions that are so standard in the type of trust here before the Court that the failure to include them demands an explanation. The *Mieras* and *Karam* Courts addressed the cases presented; nothing in those opinions indicates that either Court intended to carve out an exemption from actions for

---

negated or are inconsistent with the absence of particular language regarding generation-skipping transfers, and the Court cannot draw those conclusions because the record contains only the most general excerpts from the documents.

As to the expert's assertion that the absence of a Crummey withdrawal provision in this trust is extraordinary, application of the majority opinion in *Mieras* mandates the conclusion that such an allegation is impermissible extrinsic evidence. In *Mieras, supra* at 306-308, the majority explicitly rejected the lead opinion's apparent approval of *Arnold v Carmichael*, 524 So 2d 464 (Fla App, 1988), and *Hamilton v Needham*, 519 A2d 172 (DC App, 1986), which permitted the beneficiaries to pursue malpractice cases based on the conclusion that "the absence of a residuary clause, which is customary in a professionally drawn will, 'is internal evidence within the will itself that something may be awry.' " *Mieras, supra* at 307. On the record so far made before us, the instant case is not distinguishable from *Arnold* and *Hamilton*. Thus, if *Mieras* were controlling, we would agree with the dissent's conclusion that the circuit court did not err in granting defendant's motion as to the beneficiaries because plaintiffs failed to show that the estate-planning documents did not comport with the decedents' intent as expressed within the four corners of those documents.

malpractice for estate planning/tax attorneys, which is the effect of the circuit court decision.

In *Mieras,* the Court stated that nonclient beneficiaries could maintain a cause of action against the attorney drafter. Two of the decedent's children claimed that the attorney who drafted a will that divided the estate between them and disinherited their sister was negligent in failing to include a provision exercising a power of appointment that had been granted the decedent under the terms of a marital trust established by the decedent's husband, the children's father. Because the power of appointment had not been exercised, the sister that had been disinherited under the will nevertheless received one third of the corpus of the trust that had been established by the father. The Court determined that while beneficiaries could file an action for failure to draft a will that effectuated the decedent's intent, in order to maintain such an action the frustration of that intent had to be apparent within the "four corners" of the will. In *Mieras*, it was not evident within the "four corners" of the will that the attorney had failed to effectuate the decedent's intent. It is not unusual for a will to fail to exercise a power of appointment. While the decedent may have intended to disinherit the daughter entirely, she may, contrariwise, have decided that she would only disinherit the daughter from her own estate, but not from the estate left by the decedent's husband, the daughter's father.

In *Karam,* the estate, a trust, and a beneficiary alleged that the attorney committed malpractice by failing to modify a trust so that it no longer provided for equalization of the estates of the decedent and his surviving spouse as it provided at the time of death of the spouse first to die. It was alleged that the trust should have provided a "normal" plan, with $600,000

(the tax-exempted exclusion) going to a family trust, and the balance going into a marital trust, thus minimizing the tax due on the first death. This Court recognized that either approach was acceptable estate planning, the "normal" method passing less money to the nonspouse heirs and involving negligible taxes on the first death; and the "equalization" method involving paying additional taxes on the first death, but passing more money to the other heirs sooner, keeping accumulations on those amounts out of the surviving spouse's estate, thus making the survivor's estate smaller, and potentially lessening the marginal rate of taxation on the second death. The *Karam* Court concluded that frustration of the decedent's intent was not apparent on the face of the documents.[5]

---

[5] The *Karam* Court additionally concluded, on the basis of *Mieras* and *Bullis,* which both dealt only with beneficiary claims, that personal representatives are also barred from relying on extrinsic evidence to dispute a settlor's intent that is clearly expressed in the estate plan documents. The *Karam* Court relied on the statement in *Mieras* that "standing in legal malpractice actions is limited to those who can show that the testator's intent *as expressed in the will* is frustrated by the negligence of the testator's attorney. *Mieras, supra* at 305, quoting with approval *Espinosa* [*v Sparber,* 612 So2d 1378, 1380 (Fla, 1993)] (emphasis in original)." *Karam, supra* at 429.

Assuming that *Karam* correctly applied *Mieras* to the negligent drafting claim of the personal representative of the actual client, rather than the beneficiary, the instant case is distinguishable to the extent it involves a claim of negligence in advising the client regarding tax consequences and in formulating the estate plan without due regard for tax consequences, rather than negligence in failing to draft the document in accordance with the client's expressed intent. We recognize that the plaintiffs in *Karam* asserted this distinction in the trial court. However, the Court of Appeals did not address this issue, presumably because the negligent advice or misrepresentation claims were predicated on the assumption that the decedent's intent with respect to the "normal" plan or the "equalization" plan was contrary to the actual language of the document. The claim thus assumed that the matter was discussed with

The *Mieras* and *Karam* Courts were concerned with imposing conflicting duties on the drafting attorney where the interests of the client and the beneficiaries might diverge, and with imposing liability based on beneficiary claims that might be inconsistent with the decedent's intent. Such concerns are not present here, where the dispute is not between beneficiaries, or between alternative reasonable approaches to estate tax planning, but between the use of tax savings language and the payment of taxes asserted to have been unnecessary.

In this day and age, clients go to estate planning experts not only to have valid testamentary documents prepared, but also to have an estate plan that will minimize the taxes payable recommended, and thus have the maximum amount transferred to the donor's intended beneficiaries at the intended times and intervals. We would be ignoring reality to dismiss legal malpractice cases such as this one on the basis of the fiction that one cannot know the decedent's intent unless it is apparent within the four corners of the estate planning documents, and without regard to common sense and expert opinion on estate planning matters. We should not ignore as judges what we know as lawyers and as men and women. It is far more likely that the decedents here intended to minimize the taxes payable upon their deaths than that they were indifferent to the amount of taxes payable, and it is virtually certain that they did not intend to pay more taxes than necessary.

While there may be valid reasons for the omission of a Crummey clause, this case was dismissed for failure to state a claim, and the reasons were only proffered in the

defendants and that although the documents provided for equalization, decedent had really intended a normal plan.

hypothetical. As discussed above, the proffered reason that the decedents may not have wanted to confer a present right of withdrawal ignores that such rights can be limited in duration and generally are not exercised precisely because the beneficiary understands that the donor does not wish that they be exercised. The proffered reason that it is costly and burdensome to send Crummey notices is fanciful when the largely administrative expense and burden of mailing these form notices is compared to the amount of taxes that might have been saved.

As observed by the *Karam* Court, 253 Mich App 423-424, this Court in *Bullis* relied on extrinsic evidence in the form of admissions of the defendant attorney. Here, defendants' motion was granted before the defendant attorneys were deposed. There is no testimony extant that the attorneys either did or did not discuss the potential value of a Crummey clause with the decedents. There is no testimony that the attorneys did or did not recommend such a provision, or that, if such was recommended, it was declined, or for what reason. There was no testimony that there were other annual gifts being made to these beneficiaries, or other trusts with the same beneficiaries that already included a Crummey clause.

Defendants should be required to testify under oath and explain either that the Crummey clause was not discussed because they did not think the standard of care required such a discussion, or that the clause was discussed, but was declined, and for what reason. Possibly the decedents gave other annual gifts to the beneficiaries, or there were other trusts, e.g., insurance trusts, naming the same beneficiaries that already contained a Crummey provision, or there were some other considerations such as generation-skipping tax

concerns that explain the decision not to include a Crummey withdrawal provision. The case should not, however, have been dismissed on the pleadings.

In short, this is not a case involving a dispute between beneficiaries regarding the decedents' true intent. Nor is it a dispute regarding which of several reasonable approaches to estate planning the decedents intended to adopt. It is asserted, rather, that the decedents engaged defendants for estate planning, which clearly encompasses tax advice, and defendants either negligently failed to advise of, or negligently failed to include, provisions that would have prevented the tax deficiencies. Such claims will rarely be apparent on the face of the estate planning documents, without resort to extrinsic evidence. There is no reason to exempt estate planning lawyers from liability for malpractice simply because the damages often accrue after their client's death. If safeguards are necessary because of the nature of this specialty, such safeguards can be developed. But applying the *Mieras* "four corners" limitation to such claims is not required by precedent, goes too far in the direction of protecting the attorney, and is against the best interests of the clients and, ultimately, the profession.

The "four corners" rule is applicable in a dispute between potential beneficiaries concerning the intended distribution of the pot of assets or pie left by the decedent. It is not applicable to a claim such as this one, that seeks recovery for diminution in the pot or pie left by the decedents alleged to have been caused by the negligence of the defendants who provided estate planning. Here the interests of the deceased clients, the estate, and all the beneficiaries are aligned on the same side, and there is no danger that defendant attorneys will be wrongly held accountable to a third-party for properly implementing the desires of their client.

We therefore reverse the grant of summary disposition with respect to the beneficiaries, the estate[6] and the living trust, and remand for further proceedings consistent with this opinion. While the claims of the estate, trust and beneficiaries are clearly duplicative, the determination of the proper plaintiff or plaintiffs should be made after further discovery. We do not retain jurisdiction.

NEFF, J., concurred.

FITZGERALD, P.J. (*dissenting*). I respectfully dissent from the majority's conclusion that the trial court erred by granting summary disposition in favor of defendants.

Plaintiffs, who are primarily the beneficiaries of the Friedmans' estates, filed this legal malpractice action against the attorneys who drew up the Friedmans' estate-planning documents, asserting that they rendered inadequate advice concerning the tax conse-

---

[6] Certain statements in *Mieras* might seem to indicate that the estate's cause of action is limited, but these statements were general observations made in the context of explaining why a direct cause of action by the beneficiaries should be recognized, and described the problem with limiting the cause of action to the personal representative of the deceased client. The statements do not constitute a holding that the estate has no cause of action, especially where the claim is not dependent on misdrafting. Regarding damage to the estate, the observations in *Mieras* have only limited application. *Mieras* and the cases there discussed involved situations where a beneficiary or group of beneficiaries claimed that the estate documents wrongly provided that another or others would receive what the plaintiffs should have received. In those cases, it was a matter of which person would receive certain assets of the estate. None of the cases involved the depletion of the estate through the payment of unnecessary taxes, which would involve the actual lessening of the amount of the estate, and the payment of part of the estate unnecessarily to a government entity not mentioned with donative intent in any of the estate planning documents.

quences of various estate-planning options. The trial court ruled that Sarah Friedman's estate, which was not a beneficiary, lacked standing to sue and that the named beneficiaries could not maintain a cause of action because they relied on extrinsic evidence to prove that the Friedmans' intent had been frustrated. We review de novo the trial court's ruling on a motion for summary disposition. *Kefgen v Davidson,* 241 Mich App 611, 616; 617 NW2d 351 (2000).

"An attorney's primary duty in drafting a will is to draft a document that legally accomplishes the testator's intent regarding disposition of the testator's property. Drafting a document that fulfills the testator's desire to transfer property to named beneficiaries . . . creates a corresponding duty to the named persons because of their third-party beneficiary status." *Mieras v DeBona,* 452 Mich 278, 299; 550 NW2d 202 (1996). That duty is limited "and only requires the attorney to draft a will that properly effectuates the distribution scheme set forth by the testator in the will." *Id.* at 302. However, the named beneficiaries must show that "the intent of the testator, as expressed within the four corners of the instrument, has been frustrated." *Ginther v Zimmerman,* 195 Mich App 647, 655; 491 NW2d 282 (1992). A disappointed beneficiary cannot "use extrinsic evidence to prove that the testator's intent is other than that set forth in the will." *Mieras, supra* at 303. The same rules apply to other estate-planning documents. *Bullis v Downes,* 240 Mich App 462, 467-469; 612 NW2d 435 (2000).

Where, as here, the alleged negligence relates to the tax consequences of estate planning, the beneficiaries can maintain a cause of action if the estate-planning documents conflict or are ambiguous regarding payment of taxes. If the intent expressed in the documents

is clear and unambiguous, plaintiffs cannot maintain a cause of action, even if the intent expressed in the documents is not the decedents' true intent. *Karam v Law Offices of Ralph J Kliber,* 253 Mich App 410, 425-427; 655 NW2d 614 (2002).

Rather than provide the estate-planning documents and demonstrate some conflict or inconsistency among them or some ambiguity within them, plaintiffs provided excerpts that shed no light on the issue and an affidavit from an expert who purported to interpret the documents. The interpretation of the estate-planning documents is a question of law for the Court to decide, *In re Bem Estate,* 247 Mich App 427, 433; 637 NW2d 506 (2001); *Karam, supra,* and an expert cannot testify regarding questions of law or legal conclusions. *Carson Fisher Potts & Hyman v Hyman,* 220 Mich App 116, 122-123; 559 NW2d 54 (1996). Because plaintiffs failed to show that the estate-planning documents did not comport with the decedents' intent as expressed within those documents, the trial court did not err in granting defendants' motion as to the various beneficiaries.

I likewise find no error with respect to dismissal of Sarah Friedman's estate. Although the decedent's cause of action for legal malpractice survived her death, MCL 600.2921, and may be pursued by the personal representative of her estate, *Mieras, supra* at 297, the only loss suffered by the decedent was, at most, deficient legal advice for which she could recover the attorney fees paid. The only significant injury, and the one for which plaintiffs seek recovery, was some untoward tax consequences that affected how much money the beneficiaries ultimately received from the decedent's estate. Because neither the decedent nor the estate suffered that loss, the personal representative cannot pursue a cause of action to recover it. *Id.*