*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0309P (6th Cir.)
File Name: 04a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CAROLE M. KARAM et al.,
*Plaintiffs-Appellants,*

*v.*

SAGEMARK CONSULTING,
INC., f/k/a CIGNA FINANCIAL
ADVISORS, INC. et al.,
*Defendants-Appellees.*

No. 03-1763

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-74743—Bernard A. Friedman, Chief District Judge.

Argued: August 4, 2004

Decided and Filed: September 10, 2004

Before: CLAY and GILMAN, Circuit Judges; MATIA,
Chief District Judge.[*]

---

[*] The Honorable Paul R. Matia, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Jamal J. Hamood, HAMOOD & FERGESTROM, Troy, Michigan, for Appellants. Ted T. Amsden, DYKEMA GOSSETT, Detroit, Michigan, for Appellees. **ON BRIEF:** Jamal J. Hamood, Richard E. Shaw, HAMOOD & FERGESTROM, Troy, Michigan, for Appellants. Ted T. Amsden, Thomas S. Bishoff, Kathleen McCree Lewis, DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. The decedent, Abraham Karam, executed a trust agreement in 1987 that divided his assets equally between a marital trust and a residual family trust. In 1994, the decedent entered into a contract with Sagemark Consulting, Inc. (then known as Cigna Financial Advisors, Inc.) to review his personal finances for a $2,500 fee. The contract provided that Sagemark would prepare a personal financial plan based upon its evaluation of relevant documents to be furnished by Karam. Despite Sagemark's awareness of the trust agreement and its repeated requests to be sent a copy, Sagemark never received the document. Sagemark's report nevertheless stated that, under the decedent's "current situation," no federal estate tax would be due upon the death of the first spouse (either the decedent or his wife, Carole M. Karam), and that any federal estate tax would not be due until the death of the surviving spouse. When the decedent died in September of 1997, his estate was worth approximately $10 million. Contrary to Sagemark's report, roughly $1.9 million in federal estate taxes was due as a result of Karam's death.

The plaintiffs, who are Karam's wife and children, subsequently filed suit against Sagemark, alleging both a breach of contract and violation of the Michigan Consumer Protection Act (MCPA). After a jury verdict for the plaintiffs in the amount of approximately $3 million, the district court granted Sagemark's motion for judgment as a matter of law. On appeal, the plaintiffs argue that Sagemark was untimely in seeking judgment as a matter of law and, in any event, that the district court erred in granting Sagemark the requested relief. Sagemark, on the other hand, contends that the district court's judgment should be affirmed both on the merits and because the plaintiffs filed their complaint after Michigan's six-year statute of limitations had run. For the reasons set forth below, we **REVERSE** the district court's grant of judgment as a matter of law, **REINSTATE** the jury's verdict, and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual background

Karam's trust agreement contained what is known as a tax equalization clause, which required that the assets subject to the trust be divided equally between the marital trust and the residual family trust. The theoretical advantage of an equalization clause is that, because of progressive estate tax rates, two smaller distributions on the deaths of each spouse will result in less total estate tax liability than would one large distribution on the death of the survivor. Equalization clauses, however, are relatively uncommon in estate planning. More prevalent is the "normal" estate distribution, where the bulk of the decedent's assets pass to the surviving spouse in a form that qualifies for the unlimited "marital deduction" under federal law. Because the distribution to the surviving spouse is not taxed, the imposition of the estate tax is deferred until that spouse dies. With an equalization clause, in contrast, the half of the decedent's assets that do not pass to

the surviving spouse are immediately subject to the estate tax, less a $600,000 general exemption that was in effect at the time of Karam's death.

In July of 1994, after responding to a direct-mail solicitation from Sagemark, Karam entered into a contract with the company pursuant to which Sagemark was to provide a financial plan regarding estate planning, investment planning, retirement planning, and business succession planning in exchange for a $2,500 fee. Sagemark employees Catherine Imerman and David Moss were involved in the process of providing the financial plan. Imerman testified that Sagemark's true purpose for providing Karam with the financial plan, unbeknownst to Karam, was to convince him that he needed life insurance that Sagemark was prepared to sell him.

The contract between Sagemark and Karam provided that Karam would "provide Advisor with financial and personal data necessary to prepare your plan," and that "on the basis of the documents you provide . . . Advisor will prepare and present a personal financial plan summarized in written form." Sagemark, however, never received a copy of Karam's trust agreement, despite requesting it from both Karam and his attorney.

Without reviewing the trust agreement that he knew existed, Moss proceeded to prepare an estate planning report that was delivered to Karam on August 18, 1994. (Moss had previously informed Karam that the plan would not address investment planning, retirement planning, or business succession planning because these types of advice were not relevant to Karam's situation.) The report stated that, under Karam's "current situation," no federal estate tax would be due upon the first spouse's death, and that any federal estate tax would be deferred until the surviving spouse died. Moss made this statement in the report because he assumed that Karam's trust agreement provided for a normal distribution.

Although Karam subsequently modified his trust agreement three times, none of the amendments affected the equalization clause.

Karam died on September 28, 1997, leaving an estate worth approximately $10 million. The plaintiffs subsequently learned that roughly $1.9 million was owed in federal estate taxes. Their claim for damages flows from the federal and state tax liabilities and their loss of use of the money that was needed to pay the taxes.

## B.   Procedural background

### 1.   *Karam v. Law Offices of Ralph J. Kliber*

In October of 1998, the plaintiffs brought a state-court malpractice action against Karam's former lawyer and the lawyer's law firm. They also sued the bank that served as cotrustee of the trust agreement for negligence, breach of fiduciary duty, and a violation of the MCPA. *Karam v. Law Offices of Ralph J. Kliber*, 655 N.W.2d 614, 618 (Mich. Ct. App. 2002). The plaintiffs contended that Karam's intent at the time he signed the trust agreement differed from what actually appeared in the text of the document. *Id.* at 617-19. Although the Michigan Court of Appeals's opinion does not state this directly, the plaintiffs apparently argued that Karam intended to have a normal estate plan that would have distributed the bulk of his assets to his wife. *See id.* at 617 (discussing a letter written by a vice president of the defendant bank, which incorrectly stated that Karam's trust provided for a normal distribution scheme); *see also Sorkowitz v. Lakritz, Wissbrun & Associates, P.C.*, 683 N.W.2d 210, 213 (Mich. Ct. App. 2004) ("*Karam* . . . was a dispute concerning the decedent's intent regarding alternative estate planning approaches.").

The trial court granted summary judgment in favor of the defendants. This decision was affirmed by the Michigan

Court of Appeals, which held that, under Michigan law, extrinsic evidence is inadmissible to show that the decedent intended an outcome different from that set forth by the language of the estate documents. *Id.* at 622-25. Because Karam's trust agreement contained an unambiguous equalization clause and because there were no disputes about which documents constituted the estate plan, the court concluded that extrinsic evidence was inadmissible to show a variance. *Id.* at 625.

### 2.   *The present lawsuit*

The plaintiffs filed the present lawsuit on September 27, 2000, naming Sagemark and three other entities as defendants. Sagemark removed the case to federal court on the basis of diversity of citizenship. The district court granted partial summary judgment in August of 2002, dismissing several of the plaintiffs' claims and all of the defendants other than Sagemark.

When the jury trial began the following month, Sagemark filed a motion in limine to exclude any extrinsic evidence of Karam's intent that conflicted with the provisions of the trust agreement. The district court granted Sagemark's motion. During the trial, however, at least two of Karam's family members testified that they had understood that no federal estate taxes would be due as a result of Karam's death. The family members did not explain the basis for their understanding. Sagemark nevertheless failed to object.

The jury returned a verdict for the plaintiffs, specifically finding that (1) Sagemark breached the contract with Karam; (2) Karam did not commit the first substantial breach of the contract by failing to provide Sagemark with the trust agreement; (3) the breach-of-contract claim did not accrue before September 27, 1994; (4) the breach caused the plaintiffs $761,927.90 in damages; (5) the plaintiffs in their individual capacities are third-party beneficiaries to the

contract between Sagemark and Karam; (6) Sagemark violated the MCPA by engaging in one or more unfair, unconscionable, or deceptive methods, acts, or practices; (7) the MCPA violation did not occur before September 27, 1994; and (8) the violation of the MCPA caused the plaintiffs $2,285,781 in damage.

Sagemark attempted to move for judgment as a matter of law twice during the trial. The first time was at the close of the plaintiffs' proof, but the district court directed Sagemark to wait until after closing arguments. Sagemark attempted to make the motion again at the close of all of the evidence, but the district court stated that it would hear arguments on all motions during the jury's deliberations. The motion was not in fact argued at that time. After the jury delivered its verdict, however, the district court stated that "I know you have reserved your right to make a Motion as a Matter of Law," and directed Sagemark to make the motion along with any other post-trial motions that it intended to file.

Sagemark filed a motion for judgment as a matter of law or, in the alternative, for a new trial in October of 2002, approximately one month after the jury's verdict. The district court granted judgment for Sagemark as a matter of law in May of 2003. In its decision, the court rejected the plaintiffs' first argument that Sagemark had waived its right to file a motion for judgment as a matter of law:

> At the close of the plaintiffs' proofs the Court ordered the defendant to defer making its directed verdict motion, and reserved all potential arguments as if the motion had been made. The Court then repeated this order at the close of all proofs. After the jury verdict, the Court told the defendant, "I know you have reserved your right to make a motion as a matter of law," and stated that this motion should be presented with other post-trial motions. Accordingly, the defendant has fully preserved its right to bring the present motion.

The district court next stated that the Supreme Court's decision in *Weisgram v. Marley Co.*, 528 U.S. 440 (2000), required the district court to disregard evidence that was improperly admitted when ruling on the motion for judgment as a matter of law. Finally, the district court concluded that, under Michigan law,

> all extrinsic evidence that was admitted regarding the plaintiffs' belief of what the decedent had told them the tax consequences of his trust would be [was in fact] inadmissible, and [was] erroneously permitted. Such testimony only serves to create the impression that the decedent's trust did not comport with his intentions. It must be assumed that the decedent intended the writing of his trust and the resulting tax consequences to be just as they were, and contrary evidence may not be admitted.

After disregarding the allegedly inadmissible evidence, the district court concluded that no legally sufficient evidentiary basis existed to support the jury's verdict in favor of the plaintiffs on either of their claims. The district court thus declined to discuss Sagemark's affirmative defense that the lawsuit was filed after Michigan's applicable six-year statute of limitations had run. This timely appeal followed.

## II. ANALYSIS

### A. The district court did not err in deciding that Sagemark had preserved its right to file a motion for judgment as a matter of law

The plaintiffs first argue that Sagemark waived its right to file a motion for judgment as a matter of law by failing to make the motion before the case was submitted to the jury. *See* Fed. R. Civ. P. 50(a)(2) ("Motions for judgment as a matter of law may be made at any time before submission of the case to the jury."). "The question of waiver is a mixed question of law and fact. We review any determination of

underlying facts under the clearly erroneous standard of review, and make a *de novo* determination of whether those facts constitute legal waiver." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 n.3 (6th Cir. 2003).

The record supports the district court's factual finding that Sagemark attempted to bring its motion for judgment as a matter of law both at the close of the plaintiffs' proof and at the close of all of the evidence. Each time, the district court ordered the defendant to defer making its motion and reserved all potential arguments as if the motion had been made. Because Sagemark twice attempted to bring its motion before the close of all of the evidence, the district court correctly concluded that Sagemark had preserved its right to make the motion after the entry of the jury's verdict.

Our disposition of this matter, however, should not be construed as an endorsement of how the district court handled this procedural issue. To the contrary, the proper practice is to allow the moving party to make its Rule 50(a) motion before the jury retires to deliberate. *See* Advisory Committee's Notes on 1991 Amendments to Fed. Rule Civ. P. 50(a)(2) ("Paragraph (a)(2) retains the requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered. The purpose of this requirement is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment.").

**B.  The district court erred in granting Sagemark's motion for judgment as a matter of law with regard to the plaintiffs' breach-of-contract claim**

"This Court reviews de novo a district court's decision to grant judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure." *Hall v. Consolidated Freightways Corp.*, 337 F.3d 669, 672 (6th Cir. 2003).

"District courts should grant judgment as a matter of law only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *LaPerriere v. Int'l Union UAW*, 348 F.3d 127, 132 (6th Cir. 2003).

The district court in the present case granted Sagemark's motion for judgment as a matter of law based upon the court's conclusion that it had erroneously admitted the family members' testimony regarding their understanding that no estate tax would be due at Karam's death. *See Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000) (holding that a district court, when considering post-trial motions for judgment as a matter of law, may disregard "testimony erroneously admitted"). According to the district court,

[s]uch testimony only serves to create the impression that the decedent's trust did not comport with his intentions. It must be assumed that the decedent intended the writing of his trust and the resulting tax consequences to be just as they were, and contrary evidence may not be admitted. . . .

[T]he legal cause of the tax consequences was the decedent's intent to have an equalization clause in his trust. The damages—the tax consequences—resulted from the fulfillment of that intent by the operation of the federal estate tax law. There was no evidence presented by which the jury could conclude that the equalization clause was caused by CIGNA. The evidence shown at trial indicated that the trust agreement containing this clause was drafted and executed years before the decedent's dealings with CIGNA. However, even if it could be shown that CIGNA advised the decedent to have such a clause, there would still not be any basis for finding that CIGNA caused the plaintiffs' damages, because the decedent's intent to have such a clause, as

expressed in the clause, would have been fulfilled, and evidence of a contrary intent would be inadmissible.

There are two problems with the district court's analysis. The first is that *Weisgram* is probably not controlling on this issue because the defendant in *Weisgram objected* to the admission of the evidence in question. 528 U.S. at 445 ("The District Court overruled defendant Marley's objections . . . ."). Sagemark, in contrast, allowed the family members' testimony to be admitted without objection. In the absence of a timely objection, such testimony is generally not considered to be "erroneously admitted." *See* Fed. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . .").

We need not decide, however, whether the district court correctly applied *Weisgram* because of a second and independent problem with the court's analysis that the plaintiffs' purpose in introducing the questioned testimony was not to negate Karam's original intent to have an equalization clause in the trust agreement. Instead, the purpose was to prove that Karam and his family members had detrimentally relied on Sagemark's incorrect advice that no federal estate tax would be due when Karam died. In other words, the district court believed that the plaintiffs had introduced the evidence in order to answer the question: "Did Karam originally intend to have an equalization clause in his trust agreement?" But that issue was not in dispute. The plaintiffs in fact introduced the testimony in order to answer the question: "Why did Karam not substitute a "normal" distribution clause for the equalization clause that was in the trust agreement?" Testimony by the family members suggested that Karam did not change the clause because he

had relied to his detriment on Sagemark's erroneous tax advice.

Our conclusion that the family members' testimony was admissible is consistent with the recent Michigan Court of Appeals decision in *Sorkowitz v. Lakritz, Wissbrun & Associates, P.C.*, 683 N.W.2d 210 (Mich. Ct. App. 2004). In *Sorkowitz*, the plaintiffs contended that the defendant attorneys had negligently provided advice regarding the tax consequences of an estate plan. The court held that Michigan's prohibition against the introduction of extrinsic evidence was not applicable, and distinguished *Karam* as follows:

> Assuming that *Karam* correctly applied [Michigan's rule against the admission of extrinsic evidence] to the negligent drafting claim of the personal representative of the actual client, rather than the beneficiary, the instant case is distinguishable to the extent it involves a claim of negligence in advising the client regarding tax consequences and in formulating the estate plan without due regard for tax consequences, rather than negligence in failing to draft the document in accordance with the client's expressed intent.

683 N.W.2d 214 n.5. Analogous to *Sorkowitz*, the plaintiffs' claim in the present case is that Sagemark provided erroneous advice regarding the tax consequences of Karam's estate plan. *Sorkowitz* therefore supports our conclusion that the district court erred in its post-trial ruling that the family members' testimony should have been excluded.

We also note that the district court never discussed whether Sagemark would have been entitled to judgment as a matter of law if the court had fully credited the family members' testimony. Morever, Sagemark does not argue on appeal that the evidence as actually admitted was insufficient to support the jury's verdict. We therefore reverse the district court's

decision to grant judgment as a matter of law with respect to the plaintiffs' breach-of-contract claim.

## C. The district court erred in granting Sagemark's motion for judgment as a matter of law with regard to the plaintiffs' MCPA claim

The district court granted Sagemark's motion without differentiating between the claim for breach of contract and the claim under the MCPA. Presumably the court assumed that the family members' testimony was necessary to establish causation as to either claim, so that, if the testimony was in fact inadmissible, judgment for Sagemark was appropriate as to both claims. But as discussed in Part II.B. above, we have concluded that the district court erred in granting judgment as a matter of law based upon the court's incorrect belief that the evidence of detrimental reliance should not have been admitted. With regard to the MCPA claim, however, Sagemark offers the additional argument that the evidence was legally insufficient to support the jury's verdict because it failed to demonstrate that the alleged violation of the MCPA was the cause of the plaintiffs' damages.

The plaintiffs' MCPA claim was based upon Sagemark's failure to disclose that the financial plan it prepared for Karam was actually a sales tool used to persuade Karam to purchase life insurance from the company. *See* Mich. Comp. Laws §§ 445.903 ("Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ."); 500.2005a(c) ("An unfair method of competition and an unfair or deceptive act or practice in the business of insurance includes all of the following: . . . (c) Making use directly or indirectly of any method of marketing that fails to disclose in a conspicuous manner that a purpose of the method of marketing is solicitation of insurance and that contact will be made by an insurance agent or insurance company.").

Sagemark argues, however, that the alleged violation of the MCPA did not cause the plaintiffs' damages because Karam's decision not to alter the equalization clause in the trust agreement was not influenced by the failure of Sagemark to disclose its true motivation for preparing the financial plan. The contrary argument is that Karam would not have relied on Sagemark's advice if he had known that the financial plan was simply a sales tool to market life insurance. Both of these arguments are plausible, but the jury resolved this debate when it found in favor of the plaintiffs on their claim under the MCPA.

In the absence of direct evidence of what Karam would have done if Sagemark had made the required disclosure, both parties were forced to argue reasonable inferences from the evidence on hand. The jury was then left to decide the following factual question: "What would Karam have done if Sagemark had disclosed its true motivation for creating the financial plan?" This disputed question of fact was reasonably resolved by the jury in the plaintiffs' favor. We therefore reverse the district court's decision to grant judgment as a matter of law with respect to the MCPA claim.

## D. Judgment as a matter of law would not have been appropriate based upon the statute of limitations

Michigan law provides for a six-year statute of limitations on claims for both breach of contract and for violations of the MCPA. Mich. Comp. Laws §§ 600.5807(8) (breach of contract); 445.911(7) (MCPA). Although the district court did not address the statute of limitations in ruling on Sagemark's motion, this court "may affirm a decision of the district court if correct for any reason, including one not considered below." *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 750 (6th Cir. 2003).

Sagemark contends that the plaintiffs' claims accrued on August 18, 1994, when the financial plan was delivered to

Karam, and that this lawsuit, filed on September 27, 2000, should therefore have been barred by the statute of limitations. The plaintiffs, on the other hand, respond by pointing out that Karam met with Sagemark employee Moss to discuss the financial plan several times in August, September, and perhaps October of 1994, and that the plaintiffs' claims did not accrue until at least the last of these meetings. Alternatively, the plaintiffs argue that their claims did not accrue until Karam's death because, until that point, an essential element of their claims had not yet been established; i.e., that plaintiffs suffered no damages until Karam's estate became liable for the death taxes.

We need not resolve which of the parties' alternative contentions is legally correct, because even if we assume for the sake of argument that the plaintiffs' claims accrued at the time Karam received the erroneous advice from Moss, rather than at Karam's death when the damage element of the claims was established, a factual dispute still remains as to the date of the advice. Sagemark contends that it occurred when the plan was delivered, while the plaintiffs argue that the meetings between Moss and Karam continued for as long as two months thereafter. This created a factual dispute for the jury to decide, which it did by specifically finding that the claims did not accrue before September 27, 1994. Because the jury's resolution of this disputed issue of fact finds support in the record, judgment as a matter of law would not be appropriate based upon the statute of limitations.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's grant of judgment as a matter of law, **REINSTATE** the jury's verdict, and **REMAND** the case for further proceedings consistent with this opinion.